In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-4016, 99-4135

Bethesda Lutheran Homes
    and Services, Inc., et al.,

Plaintiffs-Appellants/Cross-Appellees,

v.

Gerald Born, et al.,

Defendants-Appellees,

and

Thomas Schleitwiler, et al.,

Cross-Appellants.

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 99-C-427-S--John C. Shabaz, Chief Judge.

Argued September 7, 2000--Decided January 25, 2001

Before Bauer, Posner, and Evans, Circuit Judges.

 Posner, Circuit Judge.  This dispute is before us
for the third, and we trust last, time. See
Bethesda Lutheran Homes & Services, Inc. v.
Leean, 122 F.3d 443 (7th Cir. 1997), 154 F.3d 716
(7th Cir. 1998). In the first round, Bethesda, a
private residential institution in Wisconsin for
the mentally retarded, along with several current
and would-be residents, brought suit under 42
U.S.C. sec. 1983 against a number of Wisconsin
state and local officials, plus Jefferson County,
where Bethesda's facility is located, challenging
provisions of the federal Medicaid regulations,
and state law governing the establishment of
Wisconsin residency, as violations of the
constitutional right to travel. The Medicaid
provisions at issue (cited at 122 F.3d 447)
authorized states that participate in the
Medicaid program (half of the expense of which is
defrayed by the federal government, the other
half by the state) to decline to provide
assistance to otherwise eligible persons who are
not residents of the state, or even to residents
who have gone out of state for care, unless the
state of residency is unable to provide the
services they need. These provisions discouraged

certain nonresidents of Wisconsin from seeking medical care in Wisconsin. That state would have no obligation to enroll them in its Medicaid program, while the state of their residency, provided it was capable of treating them in-state, would have no obligation to reimburse their treatment costs in Wisconsin. They would be stuck in their home state.

All this would not have mattered had Wisconsin allowed these nonresidents to become residents. But the state law also challenged by the plaintiffs prevented this. And although this joint federal-state discouragement of medical-care shopping might well have powerful fiscal or other social merits to recommend it, we held that the one-two punch violated the Constitution and must be enjoined. We also held, however, that the plaintiffs could not obtain monetary relief from the defendant state officials insofar as they had been sued in their official capacity, since such suits are deemed to be suits against the state itself, thus bringing the Eleventh Amendment into play. We remanded for the entry of the injunction and for consideration of the other relief sought by the plaintiffs and not barred by the Eleventh Amendment.

The injunction was duly entered on remand. Bethesda thus became entitled to Medicaid reimbursement of future expenses incurred by it in serving these individuals, but not to reimbursement of expenses incurred before the legal bars were removed by our decision; that would have been monetary rather than injunctive relief. The only monetary relief sought on remand was against Jefferson County and was turned down by the district court on the ground that a municipal government cannot be held liable in damages under section 1983 if it committed the acts of which the plaintiff complains under the compulsion of federal and state law. In their second appeal the plaintiffs, while accepting the principle on which they had been denied damages, challenged its application to the facts, arguing that the officials of Jefferson County had wanted to deny these plaintiffs benefits regardless of federal or state law. Affirming the judgment for Jefferson County, we held that the county officials' state of mind was irrelevant in a case such as this where the officials were given no latitude by state or federal law to grant the benefits sought; their state of mind played no causal role in their actions.

In struggling against the proposition that Jefferson County was off the hook by virtue of having acted under the compulsion of state law, the plaintiffs had intimated that the county had not been compelled after all. We had said the

opposite in our first opinion--specifically, that state law had forbade the county to certify the plaintiffs as county residents, a prerequisite to their being entitled under Wisconsin law to Medicaid benefits. In the second appeal the plaintiffs simply ignored that ruling. (They continue a pattern of selective forgetfulness in this round as well, failing even to cite our second opinion.) Yet that earlier ruling was the law of the case, and if the plaintiffs wanted us to depart from it they had to acknowledge the ruling and give reasons for our abandoning it. This they had failed to do, thus bringing into play the principle that "unchallenged determinations in a previous decision in the same case unquestionably bind the court in a subsequent appeal." 154 F.3d at 719.

Rather than accept the second decision, Bethesda brought a new case, the one before us today. Damages are sought in this case against the officials of the state and of Jefferson County who refused Medicaid benefits to the eight individuals who are coplaintiffs with Bethesda, several but not all of whom were plaintiffs in the previous suit, the one that was before us in the two previous appeals. The contention in the present suit is that the Medicaid regulations challenged in the previous suit, rather than unconstitutionally authorizing the defendants to deny benefits to nonresidents, as the plaintiffs had argued in that suit and we had agreed, had commanded them to pay those benefits, and it was in defying the command that the defendants had violated the plaintiffs' right to travel. The district court dismissed the new suit primarily on the ground that the defendants were entitled to a qualified (that is, good-faith) immunity from a suit for damages, as no rule of law that was clearly established when they acted forbade them to deny benefits to nonresident patients at Bethesda's facility. The judge found it unnecessary to reach most of the other grounds for dismissal urged by the defendants.

The plaintiffs have appealed; and the defendants cross-appeal from the district court's refusal to impose sanctions on the plaintiffs under Rule 11 of the Federal Rules of Civil Procedure. The judge thought the plaintiffs entitled to bring this suit for the purpose of urging us to overrule our previous decisions holding that state and federal law had unconstitutionally prevented the award of benefits. Unless we do so, the Eleventh Amendment, the principle that a county is not suable under 42 U.S.C. sec. 1983 in respect of acts done by it under compulsion of state or federal law, and the principle of qualified immunity combine to bar the plaintiffs from obtaining any monetary relief.

The appeal is frivolous on so many grounds that it is difficult to know where to begin. If the plaintiffs in this second suit were identical to the ones in the first, or in privity with those plaintiffs, then it would be obvious that the present suit was barred by the principle of res judicata, because the claim in the two suits is the same--that the state and county officials had denied the plaintiffs Medicaid benefits in violation of law. Not that all the arguments are the same, but for purposes of res judicata a claim is not an argument or a ground but the events claimed to give rise to a right to a legal remedy, e.g., United States v. County of Cook, 167 F.3d 381, 383 (7th Cir. 1999); Brzostowski v. Laidlaw Waste Systems, Inc., 49 F.3d 337, 339 (7th Cir. 1995); Prochotsky v. Baker & McKenzie, 966 F.2d 333, 335 (7th Cir. 1992); Wilkins v. Jakeway, 183 F.3d 528, 535 (6th Cir. 1999); Woods v. Dunlop Tire Corp., 972 F.2d 36, 39 (2d Cir. 1992), and they are the same in the two suits.

The plaintiffs are not identical, but this turns out to make no difference. First, insofar as Bethesda is concerned and those individual plaintiffs who were plaintiffs in the first suit as well, they cannot avoid the bar of res judicata by bringing in additional plaintiffs. Dreyfus v. First National Bank, 424 F.2d 1171, 1175 (7th Cir. 1970); United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 249 (9th Cir. 1992). The defense of res judicata is not avoided by joinder. Second, the newly added individuals (and this is doubtless true of the overlapping individual plaintiffs as well, though that is unnecessary to decide) are not proper parties, because they lack standing to sue, having no stake in the litigation. As the plaintiffs' lawyer acknowledged at argument, any recovery of benefits in this suit will go to Bethesda, which incurred the expenses of serving the individual plaintiffs until the injunction that was issued on remand from the first appeal gave them prospective relief. The plaintiffs are indigent, and Bethesda does not claim to be entitled to obtain any money from them, so it is not as if they were seeking monetary relief in order to satisfy a debt to Bethesda. They are seeking no relief.

So the suit is barred by res judicata, but it is also barred by the doctrine of judicial estoppel: a party that has won a suit on one ground may not turn around and in another case obtain another judgment on an inconsistent ground. E.g., Saecker v. Thorie, No. 00-2257, 2000 WL 1810097, at *4 (7th Cir. Dec. 12, 2000); Moriarty v. Svec, 233 F.3d 955, 962 (7th Cir. 2000); Lydon v. Boston

Sand & Gravel Co., 175 F.3d 6, 12-13 (1st Cir. 1999). The plaintiffs argued in the first suit that the relevant Medicaid regulations and Wisconsin state law were unconstitutional. Having won that suit to the extent of getting the legal obstacles to Medicaid reimbursement removed, they could not turn around and in the next suit seek additional relief by arguing that the regulations and state law were constitutional after all and compelled the defendants to grant them benefits. It does not matter that the plaintiffs did not win everything they sought in their first suit. They won a judgment, and cannot now seek another judgment on an inconsistent ground. The doctrine of judicial estoppel would not apply to a new party, one that had not benefited from the judgment in the previous suit, but we have seen that the only new plaintiffs in this, the second suit, are actually not parties to it because they have no stake in its outcome.

The plaintiffs point out that the defendants did not argue judicial estoppel in the district court. But the doctrine is for our protection as well as that of litigants, and so we are not bound to accept a waiver of it. In re Cassidy, 892 F.2d 637, 641 (7th Cir. 1990); Motley v. New Jersey State Police, 196 F.3d 160, 163 (3d Cir. 1999); cf. Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 601 (9th Cir. 1996); 18 Moore's Federal Practice sec. 134.34[1] (3d ed. 2000); but cf. United States for Use of American Bank v. C.I.T. Construction Inc., 944 F.2d 253, 258 (5th Cir. 1991) (waiver binding except in "egregious" case). Its purpose is to protect the judicial system from being whipsawed with inconsistent arguments and to discourage the form of fraud that consists of withholding your best ground in the first of a series of suits because it is helpful to your opponent in that suit hoping to win that suit on a different ground and then spring your inconsistent best ground in a later suit in order to obtain additional relief.

There is more. The premise of the present suit is that our previous decisions were wrong. The plaintiffs argue that because there are new parties, the previous decisions are not binding. That premise is wrong, as we have seen, but forget that. The plaintiffs' lawyer does not understand the doctrine of stare decisis. It is res judicata that bars the same party from relitigating a case after final judgment, and the doctrine of law of the case that counsels adherence to earlier rulings in the same case. E.g., Vidimos, Inc. v. Wysong Laser Co., 179 F.3d 1063 (7th Cir. 1999); United States v. Becerra, 155 F.3d 740, 753 n. 15 (5th Cir. 1998); United States v. Unger, 700 F.2d 445, 450 (8th Cir. 1983). It is stare decisis that bars a different

party from obtaining the overruling of a decision. The existence of different parties is assumed by the doctrine, rather than being something that takes a case outside its reach. Of course, stare decisis is a less rigid doctrine than res judicata. But it is not a noodle. For the sake of law's stability, a court will not reexamine a recent decision (our previous decisions are two and three years old, respectively) unless given a compelling reason to do so. E.g., Joy v. Penn-Harris-Madison School Corp., 212 F.3d 1052, 1066 (7th Cir. 2000); Snajder v. INS, 29 F.3d 1203, 1207 (7th Cir. 1994); In re Patterson, 825 F.2d 1140, 1147 (7th Cir. 1987); Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 527 (2d Cir. 1990); Brewster v. Commissioner, 607 F.2d 1369, 1373 (D.C. Cir. 1979) (per curiam). The reason might be a legislative change, a change in applicable regulations, a judicial decision dealing with a related or analogous issue, a change in the social or economic context of the issue, or some other important new information. Patterson v. McLean Credit Union, 491 U.S. 164, 173-74 (1989); United States v. Aman, 31 F.3d 550, 554 (7th Cir. 1994); Stewart v. Dutra Construction Co., 230 F.3d 461, 467 (1st Cir. 2000); Critical Mass Energy Project v. NRC, 975 F.2d 871, 876 (D.C. Cir. 1992) (en banc). The plaintiffs point to nothing of that kind. They make the same arguments that were made by the same counsel when rehearing of our first decision was sought.

The ground on which the district court dismissed the claim for damages against the defendants in their personal capacities, qualified immunity, was solid too. (The claims against them in their official capacity are barred by the Eleventh Amendment and, regarding those defendants who are employees of Jefferson County, by our previous affirmance of the dismissal of the claim for damages against the county.) Before we upheld the constitutional challenge in the first suit there was no case authority that made it unreasonable for the defendants to assume the constitutionality of their actions. Even more clearly, they had no obligation to foresee and accept the argument now made by the plaintiffs, which is that the regulations that the plaintiffs challenged in the previous suit actually compelled the defendants to grant the benefits sought rather than operating as a roadblock to those benefits. An argument that the plaintiffs' lawyer didn't think good enough to make in the first suit is now said to be so obviously sound that the defendants were clearly unreasonable to have failed to govern their behavior by it!

And for completeness we add that even if we were minded to consider the plaintiffs' new

substantive arguments, we would reject them. The principal argument is that 42 C.F.R. sec. 435.403(m), which provides that "where two or more states cannot resolve which State is the State of residence, the State where the individual is physically located is the State of residence," clearly required Wisconsin to recognize the plaintiffs as citizens of Wisconsin. The precise meaning of this regulation is unclear, and we can find no cases interpreting it, but it clearly did not require the defendants to award benefits to these nonresidents on the ground that the regulation made them residents. For there is no indication of a dispute with another state. It is true that Illinois provided a document to some of the plaintiffs stating that they were not residents of Illinois, but it did so, as the accompanying correspondence made clear, as an accommodation to these plaintiffs, to help them to obtain Medicaid benefits in Wisconsin. There is no evidence that Illinois and Wisconsin actually disagree over, let alone that they cannot resolve, the issue of which state the plaintiffs are residents of. If Illinois' "helpful" action triggered the regulation, it would empower any state, without evidence, argument, or formalities, to force any other state to treat the first state's residents at no expense to the "exporting" state, provided only the residents were willing to travel to the other state for treatment.

We come last to the issue of sanctions. The appeal, as we have said, is frivolous; but so was the suit. Not because a party should be sanctioned for seeking a change in law, in this case a change in our ruling in the first appeal, but because, whatever the possible merit of the suit, it should have been obvious to any lawyer that relief was barred on multiple grounds, including res judicata, the Eleventh Amendment, judicial estoppel, and qualified immunity. So clear is this that we think it was unreasonable for the district court to deny relief under Rule 11. That denial is reversed and the matter returned to the district court for the assessment of a proper sanction. In addition we direct Bethesda to show cause within 21 days why sanctions for the filing of a frivolous appeal should not be imposed under Rule 38 of the Federal Rules of Appellate Procedure and section 1927 of the Judicial Code.

Affirmed in Part, Reversed in Part, Remanded with Directions, and Order to Show Cause Issued.