BEATRYCE LIPSCOMB, on Behalf of Veronica Lipscomb, a Minor, Plaintiff-Appellant, v. TYREE WELLS, Defendant-Appellee and Cross-Appellant.

First District (2nd Division)   No. 1—00—3793

Opinion filed November 27, 2001.

Richard A. Devine, State's Attorney, of Chicago (Robert J. Ruiz, Mary T. Donoghue, and Leonard N. Foster, Assistant State's Attorneys, of counsel), for appellant.

Edwin R. Armstrong and Gregory C. Armstrong, both of Armstrong & Donnelly, Ltd., of Chicago, for appellee.

JUSTICE GORDON delivered the opinion of the court:

Plaintiff, Beatryce Lipscomb (plaintiff), on behalf of Veronica Lipscomb (V.L.), her minor daughter, appeals from the judgment of the circuit court of Cook County which vacated a previous judgment declaring defendant Tyree Wells (defendant) to be V.L.'s father. On appeal, plaintiff contends that defendant's collateral attack on this judgment is time-barred. Plaintiff also contends that the time limitation

under section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 2000)) was not extended by any fraudulent concealment which the defendant has urged below. The plaintiff further contends that the defendant does not qualify for relief under section 7(b—5) of the Illinois Parentage Act of 1984 (750 ILCS 45/7(b—5) (West 2000)). We affirm.

## BACKGROUND

On June 3, 1988, plaintiff brought a paternity action against defendant Tyree Wells to have him adjudicated as the father of her minor child, V.L., born in January of that year. In the verified complaint initiating the paternity action, plaintiff alleged that defendant was the natural father of V.L. On July 29, 1988, an agreed order of parentage and support was entered against defendant together with a conditional order to withhold a monthly sum from his income for support of the child.

On February 2, 2000, defendant filed a verified petition pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 2000)) and pursuant to section 7(b—5) of the Illinois Parentage Act of 1984 (750 ILCS 45/7(b—5) (West 2000)) seeking an order compelling a DNA test to determine the parentage of V.L. The petition further prayed that in the event of "a negative test result" the court vacate the judgement entered on July 29, 1988, and all subsequent court orders concerning support and visitation and refund all child support payments made pursuant to said orders.

The petition averred that defendant agreed to the entry of the July 29, 1988, judgment without the benefit of DNA testing based upon representation of plaintiff that he was the natural father of V.L. and that plaintiff had no other relations with men at the time of conception. The petition also alleged that on or about December 20, 1998, while defendant was at the home of plaintiff and V.L., plaintiff, during the course of a quarrel over Christmas shopping money for V.L., stated that V.L. was not defendant's child and that "she had been seeing another man at the time of conception." The petition further alleged that a new child who strongly resembled V.L. was subsequently born to plaintiff of an undisputedly different father. The petition then charged that the judgment of July 29, 1988, "may have been the result of fraud, misrepresentation or concealed facts" which could be determined pursuant to an order requiring submission by the parties and the child to DNA testing. The petition apparently further alleged that this concealment was not disclosed until 1998, thereby tolling the limitations period under section 2—1401.

On March 17, 2000, plaintiff moved to strike defendant's petition

on the grounds that it was time-barred under section 2—1401 because it was filed more than two years beyond the date of the judgment of paternity. Defendant responded thereto on April 5, 2000, stating that the time period was tolled due to plaintiff's fraudulent concealment of the parentage of her child. On April 14, 2000, the trial court entered an order which denied plaintiff's motion to strike. By that same order, plaintiff was given 28 days in which to respond to the petition and the matter was set for a hearing. On May 16 plaintiff filed a response to defendant's petition which challenged defendant's position as a matter of law *but which did not contest its allegation of fact as to plaintiff's representation pertaining to the birth of V.L. in 1988 and her contrary representation to defendant on December 20, 1998.*

The hearing on defendant's petition apparently commenced on June 19, 2000. On that date the court entered an order finding that defendant "has not complied with the provisions of 750 ILCS 45/7 (b—5), he not having [*sic*] obtained genetic DNA testing." By that order the court continued the matter to July 25, 2000, for plaintiff to respond to defendant's argument "on the remaining issue of fraudulent concealment pursuant to respondent's [defendant's] section 2—1401 petition." The circuit court also ordered the minor child and plaintiff to be present.

On July 25, 2000, the court proceeded with the scheduled hearing although neither plaintiff nor the minor appeared. At that hearing the court found that the alleged representations on December 20, 1998, repudiating petitioner's paternity were in fact made. According to the judge, this was corroborated by the further fact that the mother ceased to allow the child to maintain a relationship with the father since that date. The trial judge also found that as of that time in 1988 when the agreed order of parentage was entered, the mother concealed from defendant the material fact "that he was not the child's father." Accordingly, the court found that defendant was deprived of the opportunity to request a blood or DNA test in 1988 by the mother's concealment of the material fact that "he was not the father of this child."

On August 8, 2000, the court entered an order finding that prior to the entry of the 1988 agreed order of paternity the mother fraudulently misrepresented to defendant that he was V.L.'s father; that the true facts of parentage were concealed by the mother until December 1998, and that as a result of that concealment, defendant was denied the opportunity to request a DNA test. Accordingly, the court vacated the parentage judgement entered on July 29, 1988, and ordered the parties to submit to DNA testing.

On September 6, 2000, plaintiff filed a motion to reconsider, asserting an inconsistency between the court's oral recitation in its or-

der on July 25, 2000, and the subsequent written order entered pursuant thereto on August 8, 2000. Plaintiff claimed that under its oral pronouncement of July 25, 2000, the court ordered DNA testing while continuing its ruling on the petition to vacate the 1988 agreed judgment, while the written order of August 8, 2000, purported to vacate that judgment and ordered the submission to DNA testing on August 18, 2000, which neither plaintiff nor the minor had complied with. On October 11, 2000, the court denied plaintiff's motion to reconsider, asserting that the written order entered on August 8, 2000, shall stand since otherwise it would lack jurisdiction to order DNA testing while the 1988 judgment remained standing.

On November 8, 2000, plaintiff filed a notice of appeal seeking to appeal the order of August 8, 2000, and the order of October 11, 2000, which denied reconsideration of the order of August 8, 2000. This appeal followed.

## ANALYSIS

Plaintiff first argues that the trial court lacked jurisdiction to open the parentage judgment of July 29, 1988, because the period for filing a section 2—1401 petition had elapsed and had not been tolled by any fraudulent concealment of V.L.'s parentage. In support, plaintiff argues that merely because she had relations with a man other than defendant during the time of V.L.'s conception does not indicate that she then knew that defendant was not V.L.'s father. Thus her 1998 assertion that defendant is not the father is at best a mere opinion or surmise, since she would have no sure way of knowing as between two sexual partners who the actual father was. Plaintiff contends that since she could not herself correctly identify V.L.'s father, she had no duty to inform defendant of the possibility that he was not the father. Moreover, she contends that defendant could have requested a blood test in 1988, as was his right under the Illinois Parentage Act of 1984. Consequently, plaintiff urges that defendant's section 2—1401 petition was not timely filed as it was not filed within the two-year window and that window was not extended by any valid claim of fraudulent concealment concerning V.L.'s parentage. We disagree.

■ Section 2—1401 states that "the petition must be filed not later than 2 years after the entry of the order or judgment. Time during which the person seeking relief is under legal disability or duress or the grounds for relief is fraudulently concealed shall be excluded in computing the period of 2 years." 735 ILCS 5/2—1401(c) (West 2000). "On presentation of the petition the court looks at the entire record and exercises a sound judicial discretion as to whether or not the [petition] may be filed, and if this discretion has not been abused the

decision will not be disturbed." *J.B. Inderrieden Co. v. Gill*, 373 Ill. 180, 182, 25 N.E.2d 796, 797-98 (1940). "[S]ection 2—1401 does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistake or negligence [citations], a party relying on section 2—1401 is not entitled to relief 'unless he shows that through no fault or negligence of his own, the error of fact or the existence of a valid defense was not made to appear to the trial court.' [Citation.]" *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 222, 499 N.E.2d 1381, 1387 (1986).

■ "The court must be satisfied that the alleged new matter was not known to the petitioner and could not have been discovered, produced or used by him with the exercise of reasonable diligence upon the former trial." *J.B. Inderrieden*, 373 Ill. at 182, 25 N.E.2d at 797-98. "Ordinarily, fraudulent concealment sufficient to toll a statute of limitations consists of affirmative acts designed to prevent discovery of a cause of action or ground for relief and silence alone does not constitute fraudulent concealment." *Halas v. Executor of the Estate of Halas*, 112 Ill. App 3d 940, 950, 445 N.E.2d 1264, 1271 (1983).

■ The appellate court's decision in *In re Marriage of Tzoumas*, 187 Ill. App. 3d 723, 732-33, 543 N.E.2d 1093, 1098 (1989), is highly persuasive. In that case, the former husband filed a section 2—1401 petition to vacate a judgment in dissolution of marriage which incorporated a marriage settlement agreement and child support provisions. The ex-husband averred in his section 2—1401 petition that he relied upon representations by his ex-wife that he was the father of the child at issue when he entered into a child support agreement. He further alleged that his ex-wife knew that he was not the father when the judgment was entered. The court held that these facts as pled would constitute fraudulent concealment by the ex-wife so as to warrant section 2—1401 relief.[1]

We find this reasoning applicable to the instant case. Plaintiff was not merely silent on the issue of V.L.'s paternity. Rather, plaintiff asserted with certainty in her initial *verified* complaint of June 3, 1988, that defendant was V.L.'s father. We thus hold that the trial court did not abuse its discretion in finding that plaintiff fraudulently concealed the true paternity of her child.

This is consistent with the holdings of other jurisdictions. Generally, courts have held that concealment of the paternity of a child from

---

[1]While *Tzoumas* did not involve a petition filed outside the two-year window, there was still a contention that the petition was not filed soon enough to show due diligence. In that context the court held that the fraudulent concealment was sufficient to excuse the filing of the petition beyond the time parameters of due diligence.

a man held liable for paternity of that child is fraud. See, *e.g.*, *Koelle v. Zwiren*, 284 Ill. App. 3d 778, 787-88, 672 N.E.2d 868, 874-75 (1996) (action for fraud will lie where defendant mother allegedly deceives plaintiff about parentage of her child); *H.P.A. v. S.C.A.*, 704 P.2d 205, 208 (Alaska 1985); *cf. Winner v. Winner*, 171 Wis. 413, 415, 177 N.W. 680, 682 (1920) ("the concealment by the woman of the paternity of her child is a fault so grievous that there is no excuse or palliation for it"). Such fraud has been held to be sufficient to allow a collateral attack on a judgment adjudicating parentage. For example, in *Love v. Love*, 114 Nev. 572, 959 P.2d 523 (1998), the ex-husband alleged in a collateral attack on his divorce judgment that his ex-wife had concealed the true parentage of the child of whom their divorce judgment had adjudged him to be the father. The supreme court of Nevada noted that "[t]hat which keeps one party away from court by conduct preventing a real trial on the issues is extrinsic fraud and forms a sufficient basis for equitable relief from the judgment." *Love*, 114 Nev. at ___, 959 P.2d at 526. The court then held that a genuine issue of material fact existed as to the fraudulent concealment. *Love*, 114 Nev. at ___, 959 P.2d at 526. See also *Arndt v. Arndt*, 336 Ill. App. 65, 78, 82 N.E.2d 908, 914 (1948) (plaintiff was entitled to annulment of his marriage to defendant upon proof that defendant misled him to believe that the child she was pregnant with prior to their marriage was plaintiff's, even though plaintiff failed to investigate whether or not he was the father); *Evans v. Gunter*, 294 S.C. 525, 528-29, 366 S.E.2d 44, 46 (App. 1988) (ex-husband permitted to collaterally attack divorce judgment adjudging him father of ex-wife's child upon showing of extrinsic fraud by wife); *Dawkins v. Dawkins*, 494 So. 2d 282, 284 (Fla. App. 1986) (award of alimony in divorce judgment vacated on husband's motion for relief from final judgment where wife perpetrated a fraud by concealing parentage of children from husband).

Plaintiff relies heavily upon *Ptaszek v. Michalik*, 238 Ill. App. 3d 72, 606 N.E.2d 115 (1992). In the facts of *Ptaszek*, the plaintiff putative father (Ptaszek) sought postjudgment relief under a section 2—1401 petition from an agreed order of paternity entered more than two years earlier. In the spring of 1981, Ptaszek entered into a sexual relationship with the defendant mother (Michalik), and Michalik became pregnant in August of that year. In 1982, two or three months after the birth of the child, Michalik told Ptaszek that she was certain that he was the father. Michalik, who had earlier rejected marriage to Ptaszek, introduced him to the man whom she did eventually marry about four months later. In the meantime, Ptaszek acted as the father of the child, participating in visitations and providing financial support. In 1984, two years after the birth of the child, Ptaszek instituted

paternity proceedings which lasted until December of 1986, when he and Michalik entered into an agreed order that identified him as the father. *Ptaszek*, 238 Ill. App. 3d at 75-76, 606 N.E.2d at 118.

On August 3, 1989, Ptaszek filed a petition under section 2—1401 of the Code of Civil Procedure seeking to vacate the paternity order of December 16, 1986. In support he averred that on May 30, 1989, Michalik told him that he was not the father. Ptaszek's petition apparently alleged that Michalik fraudulently concealed the fact that he was not the father of her child and thus he should be permitted to file his petition beyond the normal two-year limitation. In her response, Michalik stated that at the time of conception Ptaszek had "no reason to believe that he was" her exclusive sexual partner and that "he had notice and knowledge of the circumstances surrounding" the birth at the time she filed her paternity action in 1984. *Ptaszek*, 238 Ill. App. 3d at 75, 606 N.E.2d at 117.

At the hearing on his section 2—1401 petition, Ptaszek attempted to introduce a blood test taken by the parties and the child that would have proven that he was not the father. The trial court precluded the admission of the test on relevancy grounds. The court then denied the section 2—1401 petition on the grounds that it was not timely. In so doing, the trial court rejected Ptaszek's contention of fraudulent concealment. *Ptaszek*, 238 Ill. App. 3d at 75-76, 606 N.E.2d at 118.

On appeal, the judgment of the trial court was affirmed. The court reasoned that Ptaszek was not prevented from challenging the finding of his paternity at the time the original judgment of paternity was entered. The court held that Michalik did not affirmatively stop Ptaszek from ascertaining that he was not the child's father since her initial assertion that he was the father was merely an opinion, as was her later assertion that he was not the father. The court stated as long as Michalik had more than one sexual partner during that period of conception, there was no way to be absolutely certain of his paternity without a blood test, which he failed to request. The court further argued that "[e]ven if we were to consider the results of the blood test at this juncture, we believe that while they may tend to show mutual mistake of fact regarding biological paternity, they are not indicative of actual fraud." *Ptaszek*, 238 Ill. App. 3d at 79, 606 N.E.2d at 120. Further, the court stated that there was no detrimental reliance because Ptaszek not only made no effort to challenge paternity but rather made an affirmative effort on his own initiative to establish that he was the father.

The opinion of the majority in *Ptaszek*, however, is challenged by a very cogent dissent (*Ptaszek*, 238 Ill. App. 3d at 79-82, 606 N.E.2d at 120-22 (Jiganti, P.J., dissenting)), with which we agree and which at-

tacks the conclusion of the majority point by point. First, the dissent aptly contests the conclusion by the majority that Michalik's representations did not constitute fraudulent concealment since she had no way of ascertaining the correct parentage of the child. The dissent notes that if Michalik was not in a position to know who the father was, she did not know that Ptaszek was the father. Yet she represented to Ptaszek that he was the father. The dissent reasons that when a party claims to know a material fact with certainty, yet knows that she does not have that certainty, the assertion constitutes a fraudulent misrepresentation. *Ptaszek*, 238 Ill. App. 3d at 80, 606 N.E.2d at 121 (Jiganti, P.J., dissenting). This is particularly significant under the facts of the case at bar since it was the belief of defendant in plaintiff's representation of certainty that precluded defendant from seeking a blood or DNA test before permitting judgment to be entered against him.

Moreover, the dissent contends that in representing to Ptaszek that he was in fact the father, Michalik was implicitly representing that during the period of conception she had only one sexual partner, a representation that was categorically false. If Michalik was having a sexual relationship with more than one man during the time of conception, but asserted that she was certain that Ptaszek was the father, that assertion constituted a fraudulent misrepresentation. The reasoning of the dissent as to this issue applies equally to the case at bar.

The dissent also disagrees with the position of the majority that Ptaszek should have asked for a blood test before the judgment of parentage was entered. The dissent correctly asserts that Ptaszek had a right to rely upon the categorical representation of the mother that he was the father. It would make little sense to compel a putative father to conduct an independent investigation in the face of a clear and categorical representation of a mother (who is also his sexual partner) as to his parentage. Cf. *Arndt*, 336 Ill. App. at 78, 82 N.E.2d at 914 (husband entitled to annulment of his marriage to wife upon proof that she misrepresented that he was the father of her child, conceived before marriage, "even though he made no attempt to ascertain the truth or falsity of the alleged misrepresentations"). This is particularly true where, as in the instant case, that representation of parentage was made by the mother in a sworn and verified petition filed in court. Cf. *Loraitis v. Kukulka*, 1 Ill. 2d 533, 538, 116 N.E.2d 329, 331 (1953) ("perjury may be assigned on a verified pleading"). Moreover, approaching the same contention from a slightly different angle, the "general rule is that '... one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him or was

guilty of negligence in so doing.' [Citations.]" *Arndt*, 336 Ill. App. at 76, 82 N.E.2d at 913. Accordingly, notwithstanding the holding of the majority, reason and established legal principals as well as persuasive authority from our and other jurisdictions compel the adoption here of the position taken by the dissenting justice in *Ptaszek.* See, *e.g., Koelle,* 284 Ill. App. 3d at 787-88, 672 N.E.2d at 874-75; *H.P.A.,* 704 P.2d at 208; *Winner,* 171 Wis. at 415, 177 N.W. at 682; *Love,* 114 Nev. at ___, 959 P.2d at 526; *Arndt,* 336 Ill. App. at 78, 82 N.E.2d at 914; *Evans,* 294 S.C. at 528-29, 366 S.E.2d at 46; *Dawkins,* 494 So. 2d at 284.

Moreover, we note that even if we were to stand with the majority in *Ptaszek,* the facts in our case are readily distinguishable. In refusing to permit a late filing of the section 2—1401 petition, the *Ptaszek* court upheld the determination of the trial court under abuse-of-discretion review. In the case at bar, unlike in *Ptaszek,* the trial court in the exercise of its discretion granted plaintiff's section 2—1401 petition. Thus, while to rule in favor of the putative father in *Ptaszek* would have required a finding that the trial court abused its discretion, here our finding in favor of the plaintiff putative father validates the trial court's exercise of its discretion.

Moreover here, unlike in *Ptaszek,* defendant never took an initiative in asserting his paternity. He only acquiesced to the judgment establishing his paternity after he was sued by the mother in a verified complaint asserting his paternity under oath. Thus there can be little question in the case *sub judice* as to the materiality of the mother's representation that he, rather than anyone else, was the father.

We further note that the majority in *Ptaszek* expressed concern about upsetting the father/child relationship that had been established in the interim period between the putative father and the child. The majority expressed reluctance to overturn that relationship by granting a delayed section 2—1401 petition. No such relationship is currently present in the case at bar, as the trial court found that plaintiff terminated defendant's relationship with V.L. Unlike under the facts in *Ptaszek,* there does not appear to be any concern on the part of plaintiff in the instant case for the disruption of any father-daughter relationship that may have existed prior to the filing of the section 2—1401 petition. This is corroborated by the trial court's finding that the filing of the petition was triggered by the mother's attempt to curtail defendant's visitation, which provided the context for plaintiff's repudiation of defendant's parentage to his face. This is further corroborated by the fact that plaintiff and her child contravened the trial court's order of June 19, 2000, when they chose not to appear in court. Thus this action, unlike the action in *Ptaszek,* is apparently pursued by the State without the cooperation of the mother herself.

■ Defendant next argues that he is entitled to relief under section 7(b—5) of the Illinois Parentage Act of 1984, which provides in relevant part as follows:

"An action to declare the non-existence of the parent and child relationship may be brought subsequent to an adjudication of paternity in any judgment by the man adjudicated to be the father pursuant to the presumptions in Section 5 of the Act *if, as a result of deoxyribonucleic acid (DNA) tests, it is discovered that the man adjudicated to be the father is not the natural father of the child.* Actions brought by the adjudicated father shall be brought by verified complaint. If, as a result of deoxyribonucleic acid (DNA) tests, the plaintiff is determined not to be the father of the child, the adjudication of paternity and any orders regarding custody, visitation, and future payments of support may be vacated." (Emphasis added.) 750 ILCS 45/7(b—5) (West 1998).

Defendant contends this provision authorizes a suit to collaterally attack a judgment of parentage without first procuring DNA results. We disagree.

We note that in the case of *In re Marriage of Lubbs*, 313 Ill. App. 3d 968 (2000), the Third District rejected the contention that an action under that provision can be maintained to open a judgment without first having obtained DNA results. The court held that this contention clearly contravenes the explicit language of section 7(b—5). Accord *Jackson v. Newsome*, 325 Ill. App. 3d 372, 385 (2001).

We are inclined to adopt the analysis in *Lubbs* since otherwise the statute would open the floodgates to encourage mere fishing expeditions seeking to open any judgment of parentage previously imposed upon an unwilling father. As noted in *Lubbs* such an impact was expressly decried by the legislative sponsor of the bill. See *Lubbs*, 313 Ill. App. 3d at 971; *In re B.C.*, 176 Ill. 2d 536, 542-43, 680 N.E.2d 1355, 1359 (1997) (Assuming, *arguendo*, that the words of the statute are unclear, we may consult legislative history as an aid to construction). The legislative history of Public Act 90—715 further confirms that DNA evidence is a necessary prerequisite to the filing of a petition. Pub. Act 90—715, eff. August 7, 1998. During the floor debate, the bill's Senate sponsor stated that the legislation "does not force anybody to have a DNA test." 90th Ill. Gen. Assem., Senate Proceedings, April 2, 1998, at 51 (statements of Senator Fawell). The House sponsor of the legislation explained that "[y]ou have to have the test to know whether you can file or not." 90th Ill. Gen. Assem., House Proceedings, May 5, 1998, at 34 (statements of Representative Pankau). However, we also note that this issue is currently pending before our supreme court. *People ex rel. Kates v. Kates*, No. 4—00—0130

(2000) (unpublished order under Supreme Court Rule 23), *appeal allowed*, 194 Ill. 2d 581, 747 N.E.2d 357 (2001). In any event we need not dispositively determine this issue here since we have upheld the right to relief under section 2—1401 which was allowed by the trial court.

Accordingly for the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BURKE, P.J., and McBRIDE, J.,concur.