**In re: Theophilus GREEN, Debtor.**

**LifeUSA Insurance Company, Plaintiff–Appellee,**

v.

**Theophilus Green, Defendant–Appellant.**

**In re: Theophilus Green, Debtor.**

**Massachusetts Casualty Insurance Company, Plaintiff–Appellee,**

v.

**Theophilus Green, Defendant–Appellant.**

**Theophilus Green, Plaintiff–Appellant,**

v.

**Bruce Lichtcsien, et al., Defendants–Appellees.**

Nos. 01–1418, 01–4152 & 01–2812.

United States Court of Appeals, Seventh Circuit.

Submitted July 11, 2002.*

Decided July 23, 2002.

Rehearing Denied Sept. 3, 2002.

---

* After an examination of the briefs and the records, we have concluded that oral argument is unnecessary. Thus, these appeals are submitted on the briefs and the records. *See* Fed. R.App. P. 34(a)(2).

Before EASTERBROOK, DIANE P. WOOD, and WILLIAMS, Circuit Judges.

## ORDER

We have consolidated for decision three appeals arising from Theophilus Green's bankruptcy action. The first two concern adversary proceedings filed by two of Green's creditors, Massachusetts Casualty Insurance Company ("MCIC") and LifeU-SA Insurance Company ("LifeUSA"). The bankruptcy court granted summary judgment in part to MCIC and LifeUSA and in part to Green. Different district judges affirmed each case. The third appeal is from Green's civil rights suit against the law firm and two attorneys who represented the insurance companies in the bankruptcy proceedings (collectively "the attorneys"). Magistrate Judge Nolan, hearing that case by consent, dismissed all but one of Green's claims for failure to state a claim and granted summary judgment to the attorneys on the remaining claim. We affirm all three judgments.

## BACKGROUND

A. Green's Insurance Policies With MCIC and LifeUSA

Green, a then-licensed clinical psychologist,[1] applied in December 1993 for disability insurance from MCIC and life insurance from LifeUSA. The latter policy included a rider that would waive premium payments if Green were ever disabled. On each application Green represented that he had never been treated for mental, nervous, or emotional conditions and that in the previous five years he had not received or been refused disability or medical benefits. Green also authorized the release of his medical records to the com-

panies, effective for two and one-half years.

In June 1994 Green suffered a stroke and began receiving disability benefits from MCIC. Pursuant to the policy rider, LifeUSA waived Green's life insurance premiums. Both companies investigated Green's benefit claims and learned that Dr. Patrick Israel had treated Green for stress, anxiety, and depression from 1985 until 1994. They also learned that Green had been receiving disability benefits from the United States Department of Veteran's Affairs based on his 1968 diagnosis of paranoid schizophrenia.

In September 1995 MCIC sued Green in Illinois state court seeking to rescind its disability coverage and receive payment of disbursed benefits because Green had materially misrepresented his medical history on his application forms. LifeUSA also sued in state court to rescind the rider (but not the life insurance policy) and receive payment of waived premiums. While these cases were pending, Green obtained his original medical records from Dr. Israel and destroyed them before MCIC and LifeUSA could obtain copies through discovery. As a discovery sanction, the Illinois court awarded attorney's fees and costs to MCIC and LifeUSA.

B. Bankruptcy Proceedings

In October 1997 Green filed for Chapter 13 bankruptcy, 11 U.S.C. § 101, and the Illinois cases were automatically stayed under 11 U.S.C. § 362. In March 1998 Green's case was converted under Chapter 7, and the trustee of his bankruptcy estate had the power to assume Green's executory contracts until 60 days after the March conversion date. *See* 11 U.S.C.

---

1. *See Green v. Benden,* 281 F.3d 661, 663–64 (7th Cir.2002), for more history regarding Green's background as a clinical psychologist.

§ 365(d)(1), (2). The trustee did not assume Green's insurance policies, and in August 1998 the bankruptcy court ordered that Green be released from all dischargeable debts, but left open the possibility that it could later deem specific debts nondischargeable.

During the bankruptcy proceedings, MCIC and LifeUSA filed separate adversary complaints seeking a declaration that Green's debts to them were nondischargeable under 11 U.S.C. § 523(a)(2)(A) & (a)(6). In response Green filed numerous counterclaims based on common law theories. Green did not schedule his counterclaims as assets under 11 U.S.C. § 521, and the bankruptcy court invited the trustee to move to vacate the estate's no asset report and pursue the counterclaims on the estate's behalf. The trustee declined.

Green then moved to exclude the medical information that MCIC and LifeUSA obtained through their investigations. He argued that the Illinois Mental Health and Development Disability Confidentiality Act ("Confidentiality Act"), 740 ILCS 110/1, prevented the use of his medical records. The bankruptcy court concluded that the Confidentiality Act allows the disclosure of such records when an individual's mental condition is material to a claim or defense in proceedings involving the validity of disability benefits. *See* 740 ILCS 110/10(a)(7).

MCIC, LifeUSA, and Green filed cross motions for summary judgment. The bankruptcy court granted MCIC's motion regarding Green's obligation to repay the disability benefits because Green fraudulently omitted significant portions of his medical history in applying for disability coverage. *See* 11 U.S.C. § 523(a)(2)(A). The court, however, denied LifeUSA's motion and discharged Green's debt for waived premiums because the company had not disbursed any benefits to Green

and thus held only a fully dischargeable, unsecured claim for insurance premiums. *See id.* The bankruptcy judge also concluded that the attorney's fees and costs awarded to MCIC and LifeUSA during the Illinois litigation were dischargeable because the insurance companies did not allege, nor did the Illinois court find, that Green intended harm by destroying his medical records. *See* 11 U.S.C. § 523(a)(6). Finally, relying on the Illinois Insurance Code, 215 ILCS 5/15, the bankruptcy court rescinded Green's disability coverage as well as the rider to the LifeUSA policy, although the court refused to rescind the life insurance policy itself because LifeUSA had waived rescission by not seeking that relief in state court. *See* 215 ILCS 5/224(c). But even though LifeUSA could not rescind the policy, the court deemed it rejected because the trustee failed to assume it under 11 U.S.C. § 365.

The bankruptcy court next dismissed for lack of subject matter jurisdiction Green's counterclaims against LifeUSA and all but two of his counterclaims against MCIC, concluding that they were "non-core" because the trustee's abandonment of them under 11 U.S.C. § 554(a) & (d) rendered them unrelated to the bankruptcy proceedings. *See* 28 U.S.C. § 157(a), (b)(2)(C). The court determined, however, that the trustee's abandonment of Green's two breach-of-contract claims against MCIC had not deprived it of jurisdiction because they were compulsory and arose from the same transaction as MCIC's rescission claim, *see* Fed. R. Bankr.P. 7013, though the bankruptcy court then granted summary judgment to MCIC on those counterclaims because Green's insurance policies with MCIC had been rescinded.

Green appealed both cases to the district court. Separate district court judges af-

firmed the judgments for substantially the same reasons as the bankruptcy court.

## C. Green's Civil Rights Lawsuit

While Green's appeals of the adversary proceedings were pending in the district court, he filed suit under various statutes and rules, alleging that the attorneys for MCIC and LifeUSA had violated his civil rights, improperly shared his confidential medical records, and made false representations to the bankruptcy court. Green also alleged various ethical violations by the bankruptcy judge. The magistrate judge dismissed Green's claims under 42 U.S.C. § 1981 and 42 U.S.C. § 1985 because he failed to allege racial discrimination and dismissed his claim under 42 U.S.C. § 1983 because the attorneys were not acting under color of state law. The magistrate judge granted the attorneys summary judgment on Green's claim under the Confidentiality Act, 740 ILCS 110, for the same reasons the bankruptcy judge admitted Green's medical records. *See* 740 ILCS 110/10(a)(7). The magistrate judge dismissed Green's claims under the Restatement of Bill of Rights for Mental Health Patients. 42 U.S.C. § 10841. Federal Rule of Civil Procedure 11, and the Rules of Professional Conduct for the Northern District of Illinois because they do not create enforceable federal rights or private rights of action. Lastly, the magistrate judge dismissed Green's claims against the bankruptcy judge because he failed to name the judge as a defendant, and, in any event, the judge would have been entitled to absolute immunity.

## ANALYSIS

In addition to his appellate briefs, Green filed in this court a "Motion for Judgement [sic] on the Merits," arguing that his debts to MCIC and LifeUSA were discharged by the bankruptcy court's August 1998 order of discharge. That argument, as well as most of Green's arguments in his appellate briefs, is unsupported by legal authority and fails to address the legal issues in the lower courts' orders. Although we construe *pro se* briefs liberally, *Greer v. Bd. of Educ.*, 267 F.3d 723, 727 (7th Cir.2001), even *pro se* litigants must provide a legal basis for their arguments, *see Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Because Green has waived these undeveloped arguments, *see United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000), we address only the arguments for which Green provides a legal argument—namely, Green's challenges to the bankruptcy court's findings of fraud, to the rescission of the LifeUSA rider, to the dismissals of his counterclaims, and to the dismissal of his § 1981 claim.

Green first argues that the bankruptcy court in the MCIC case erred in "basing any decision on fraud" because he did not commit an affirmative act of fraud. Green's argument is somewhat difficult to discern, but it appears that he is challenging (1) the conclusion that his debt to MCIC for disability benefits is nondischargeable under § 523(a)(2)(A), and (2) the rescission of the MCIC disability coverage under 215 ILCS 5/154. In support of his argument Green cites three Illinois cases that explain the doctrine of fraudulent concealment—a doctrine that tolls the statute of limitations when an individual affirmatively acts to prevent the discovery of a cause of action. *See Lipscomb ex rel. Lipscomb v. Wells*, 326 Ill.App.3d 760, 260 Ill.Dec. 374, 761 N.E.2d 218, 222 (Ill.App. Ct.2001). But fraudulent concealment is not at issue in this case. Moreover, an affirmative act of fraud is not required to declare a debt nondischargeable, *McClellan v. Cantrell*, 217 F.3d 890, 892 (7th Cir.2000), or to rescind an insurance policy in Illinois, 215 ILCS 5/154; *Northern Life*

*Ins. Co. v. Ippolito Real Estate P'ship*, 234 Ill.App.3d 792, 176 Ill.Dec. 75, 601 N.E.2d 773, 779 (Ill.App.Ct.1992). We thus perceive no error in ordering rescission of the MCIC disability coverage or in finding that Green's debt to MCIC for policy benefits was nondischargeable.

■ Green next argues that, because the LifeUSA rider was a fully executed contract, the bankruptcy court erred by deeming it rejected by the bankruptcy trustee. *See* 11 U.S.C. § 365. Green misconstrues the bankruptcy court's disposition of the LifeUSA rider. The bankruptcy court did not deem the rider rejected under 11 U.S.C. § 365; rather, it rescinded the rider under 215 ILCS 5/154 based on Green's misrepresentations, and 215 ILCS 5/154 does not limit rescission to executory contracts. But Green also argues that the district court erred in rescinding the rider because contracts may not be rescinded without mutual consent. That argument is unavailing because mutual consent is not necessary to rescind a contract under 215 ILCS 5/154. All that is required is a misrepresentation that either was made with an intent to deceive or was material to the risk assumed by the insurance company. *Golden Rule Ins. Co., v. Schwartz*, 323 Ill.App.3d 86, 256 Ill.Dec. 70, 751 N.E.2d 123, 128 (Ill.App.Ct.2001). Thus, because Green's omissions materially altered the risk that LifeUSA assumed, the bankruptcy court correctly rescinded the LifeUSA rider under 215 ILCS 5/154.

■ Green next challenges the dismissal of his counterclaims for lack of subject matter jurisdiction, arguing that MCIC and LifeUSA waived any challenge to jurisdiction by failing to object in the bankruptcy court. But parties cannot waive subject matter jurisdiction, and district courts have a duty to determine that subject matter jurisdiction exists. *Weaver v.*

*Hollywood Casino–Aurora, Inc.*, 255 F.3d 379, 381 (7th Cir.2001).

■ Green also challenges the dismissal of his counterclaims against LifeUSA on the ground that those claims were "core" because the value of the LifeUSA policy could have been used to pay off his creditors. The bankruptcy court dismissed the counterclaims for lack of jurisdiction on the theory that the trustee had abandoned them and consequently rendered them unrelated to the bankruptcy proceedings. *See* 28 U.S.C. § 157(a), (b)(2)(C). Green, though, never scheduled his counterclaims under 11 U.S.C. § 521, and a bankruptcy trustee cannot abandon unscheduled assets. *See In re Cundiff*, 227 B.R. 476, 479 (B.A.P. 6th Cir.1998); *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir.1995): *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir.1991). But even though the trustee never abandoned the counterclaims, the trustee rejected the LifeUSA policy on which the counterclaims were based, and those claims could no longer affect the amount of property in the bankruptcy estate. Thus, the bankruptcy court properly dismissed Green's counterclaims. *See* 28 U.S.C. § 157(a); *In re FedPak Sys., Inc.*, 80 F.3d 207, 213–14 (7th Cir.1996).

■ Finally, Green argues in his suit against the attorneys that Magistrate Judge Nolan failed to take into account his *pro se* status when dismissing his § 1981 claim for failure to state a claim. Section 1981 protects the rights of all persons to make and enforce contracts, in addition to protecting "personal rights to sue, to testify, and to equal rights under all laws for the security of persons and property." *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987). The most common type of § 1981 suit involves racial discrimination in the employment setting, *see, e.g., Rivers v.*

*Roadway Exp., Inc.*, 511 U.S. 298, 301, 114 S.Ct. 1510, 128 L.Ed.2d 274 (1994); *Curry v. Menard, Inc.*, 270 F.3d 473, 475 (7th Cir.2001), though § 1981 also encompasses other wrongs such as discriminatory police conduct, *see Smith v. City of Chicago Heights*, 951 F.2d 834, 836 (7th Cir.1992); *Mahone v. Waddle*, 564 F.2d 1018, 1027–28 (3d Cir.1977). Upon review of Green's amended complaint and lengthy brief, it is clear that he is merely challenging the bankruptcy court's adverse rulings. Because the proper avenue for those challenges is a direct appeal, the dismissal of his § 1981 claim is affirmed.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgments in all three appeals and DENY Green's "Motion for Judgement [sic] on the Merits." This does not, however, dispose of all pending business in Green's cases. For two independent reasons, we hereby issue an Order To Show Cause to Green to explain why he should not be sanctioned for his conduct before this court. First, Green has filed both an earlier meritless appeal in this court, *Green v. Bendon*, 281 F.3d 661, *supra* n. 1 (making him a repeat offender with these three), and in a series of cases, including the present three, *Bendon*, and others, he has filed numerous frivolous motions. (See, in addition to the cases cited, Nos. 00–3798 and 00–3777.) This course of conduct merits sanctions under Fed. R.App. P. 38. *Bethesda Lutheran Homes and Servs., Inc. v. Born*, 238 F.3d 853, 859 (7th Cir.2001); *Berwick Grain Co., Inc. v. Illinois Dept. of Agriculture*, 217 F.3d 502, 505 (7th Cir.2000); *Meeks v. Jewel Co.*, 845 F.2d 1421, 1422 (7th Cir.1988) (frivolous motions included). Second, Green's brief

in No. 01–2812 is filled with utterly inappropriate slurs based on the race and religion of the lawyers and judges involved in that matter. It so far departs from the standards of courtesy and professionalism required by this court—even for a *pro se* litigant—that sanctions appear appropriate. Green has 10 days from the date of this order to file his response to this Order To Show Cause why he should not be fined or otherwise sanctioned.