UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

(Submitted November 2, 2006[*])
Decided December 22, 2006

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

| | |
|---|---|
| Nos. 05-2350, 05-2351 | |
| | Appeals from the United States |
| James Neuman, | District Court for the |
| *Plaintiff-Appellant*, | Central District of Illinois. |
| | |
| *v.* | No. 05-1002 |
| | |
| Mike McCoy, et al., | **Joe Billy McDade**, *Judge.* |
| *Defendants-Appellees*. | |

**O R D E R**

James Neuman filed this *pro se* civil rights law suit against numerous defendants, including various Peoria City and County officials and entities and the State of Illinois. This is the second time he has tried to assert claims arising out of his arrest and detention on January 21, 2003, and the denial of his request to have certain subpoenas served on his behalf. See *Neuman v. Peoria County Police Dep't,* No. 05-3279, 2006 WL 1869435 (7th Cir. June 26, 2006) (unpublished order). Relying on the doctrines of claim and issue preclusion, the district court dismissed

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. The appeal is therefore submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2).

the suit. We affirm.

## I

The underlying facts reveal a brief episode of mistaken identity, which was straightened out relatively quickly. In January 2003 Neuman, who was pursuing a small claims action, went to court to appear before Judge Brian Nemenoff of Peoria County. While he spoke to the courthouse bailiff, complaining that his case had been delayed while Judge Nemenoff was hearing criminal cases, Officer Larry Ryan and then-Officer Tim Fuller approached him to determine whether he was the same James Neuman who was wanted on an outstanding arrest warrant. When they asked for his date of birth, Neuman was uncooperative: he responded that he did not have his driver's license and that he would not provide his date of birth. The officers arrested him pursuant to the warrant.

Very shortly thereafter, a police dispatcher radioed the date of birth of the James Neuman named on the warrant. The officers quickly realized that the Neuman they arrested was younger than the 45-year-old they were seeking. Rather than release him, however, the officers changed the charge to obstruction of justice, because Neuman had refused to provide his date of birth. At that point, Neuman was taken into custody, held for four hours (during which he alleges that Fuller taunted him by laughing and waving at him), and released. Prosecutors did not pursue the obstruction of justice charge.

Two months before commencing his first lawsuit, Neuman tried to obtain certain courthouse video surveillance tapes by delivering two subpoenas to Jim Ludolph, Director of Courthouse Security and Civil Process Server Supervisor for the Peoria County Sheriff and asking Officer Ludolph to serve them for him. Ludolph refused because they were not related to a pending matter.

In January 2004, Neuman filed his first action, basing it on 42 U.S.C. § 1983. In it, he alleged that Judge Nemenoff erred both by delaying his consideration of Neuman's small claims case to attend to his criminal docket and in his ultimate dismissal of Neuman's case. He also charged that Officer Ryan wrongfully arrested him pursuant to the outstanding arrest warrant and that Officers Ryan and Fuller wrongfully arrested him for obstruction of justice. Finally, he asserted that Ludolph wrongfully refused to serve his subpoenas. The district court dismissed his claims against the Peoria Police Department, Officer Ryan, and Judge Nemenoff for failure to state a claim upon which relief can be granted; it dismissed his claim against Officer Fuller for lack of personal jurisdiction; and it granted summary judgment in favor of Officer Ludolph. Neuman appealed, and we eventually affirmed the district court's judgment.

## II

While Neuman's appeal in his first case was pending in this court, he filed a second lawsuit, also based on 42 U.S.C. § 1983, in which the facts he alleged were identical but the legal theories were new and some additional defendants were named. The district court dismissed the new suit on its own motion, citing claim and issue preclusion. The court reasoned that Neuman could not raise these claims against the Police Department, Officer Ryan, Officer Ludolph, and Judge Nemenoff, because there was a final judgment on the merits in favor of each one. As for the remaining defendants, the court found that issue preclusion barred Neuman's claims: the first suit necessarily resolved the dispositive issue of whether Neuman was deprived of any rights. Neuman has again appealed.

We first consider the district court's invocation of claim preclusion to bar Neuman's suit against the four original defendants. (We note that this is ordinarily an affirmative defense, which a defendant would raise under Fed. R. Civ. P. 8(c), but in this case the problem was apparent on the face of Neuman's second complaint and the defendants have by now made it clear that they had no intention of waiving this defense.) Claim preclusion requires (1) a prior final judgment on the merits; (2) the same claim; and (3) the same parties or their privies. *Tartt v. Nw. Cmty. Hosp.,* 453 F.3d 817, 822 (7th Cir. 2006). Claim preclusion bars not only issues actually decided in the prior suit, but also those that could have been raised. *Highway J Citizens Group v. United States Dep't of Transp.,* 456 F.3d 734, 741 (7th Cir. 2006).

Neuman urges us to find that he is not advancing the same claim in his new lawsuit, because the legal theories he is asserting are different. This argument, however, reflects a fundamental misunderstanding of the concept of claim preclusion. For purposes of claim preclusion, "a claim is not an argument or a ground but the events claimed to give rise to a right to a legal remedy." *Bethesda Lutheran Homes & Servs., Inc. v. Born,* 238 F.3d 853, 857 (7th Cir. 2001). It is plain from a review of Neuman's two complaints that both arise out of the same transaction or occurrence, such that both represent only one constitutional "case." Cloaking these facts in new legal jargon does not create a new claim. See *Cannon v. Loyola Univ. of Chicago,* 784 F.2d 777, 780 (7th Cir. 1986). Neuman also argues that the present lawsuit is different because he has named new defendants. But that fact has nothing to do with the question whether claim preclusion bars his suit against the defendants who were present for the first case. The district court correctly recognized that it does.

We turn now to the claims against the new defendants, which the district court found barred by virtue of issue preclusion. The latter doctrine bars the relitigation of issues of fact or law between the same parties or their privies. *Simon v. Allstate*

*Employee Group Med. Plan,* 263 F.3d 656, 658 (7th Cir. 2001). There are four elements to issue preclusion: (1) the issue must be the same as the one involved in the prior action; (2) the issue must actually have been litigated; (3) the determination of the issue must have been necessary to the prior judgment; and (4) the party against whom preclusion is invoked must have been present (or properly represented) in the prior action. *Wash. Group Int'l, Inc. v. Bell, Boyd & Lloyd LLC,* 383 F.3d 633, 636 (7th Cir. 2004).

Neuman raises only a general challenge to the identity of issues in his two suits. He also urges, again, that the lawsuits differ because he has added new parties (including the State of Illinois, the City of Peoria, the County of Peoria, the Chief Judge of the Peoria County Courthouse, unnamed police officers, and the unnamed Bailiff of the Peoria County Courthouse) and he has advanced new legal theories (including allegations of First, Fifth, Sixth, Eighth, and Ninth Amendment violations). As for Neuman's first point, the district court correctly found that his claims could succeed only if Neuman's allegations revealed that the defendants' actions (or inaction) deprived him of a right secured by the Constitution or laws of the United States, as § 1983 requires. *Baker v. McCollan,* 443 U.S. 137, 140 (1979). Since the very same actions are at issue in the present case, this element of issue preclusion is easily satisfied. The fact that Neuman is now trying to assert those claims against new defendants is of no moment, since the Supreme Court has recognized that issue preclusion may be used offensively against a plaintiff who has had one full and fair opportunity to litigate a given claim, as long as exceptions not applicable here do not apply. See *Parklane Hosiery Co. v. Shore,* 439 U.S. 322 (1979).

The judgment of the district court is AFFIRMED. Our business with Neuman is not quite complete, however. The records of this court show that, in addition to the two appeals now before us, Neuman has filed 28 additional notices of appeal recently. Eighteen of those appeals were dismissed as duplicative while a motion for permission to proceed *in forma pauperis* was pending, see Nos. 05-2153, 05-2217, and 05-2455-2470; the court waived the fee in No. 05-2471 after the appeal was administratively closed on the ground that it had been opened in error; and Neuman paid the filing fee for five of his appeals, Nos. 05-1223, 05-2152, 05-3279, and the two now before us, 05-2350 and 05-2351. He has not paid the filing fee for the remaining six appeals: Nos. 05-1111 and 05-1646, both of which are appeals for which the filing fee was $255, and four mandamus actions, 05-1216, 05-2119, 05-2120, and 05-2121, for which the filing fee was $250. In all, this means that Neuman owes $1,510 in unpaid filing fees. Under the terms of *Support Systems Int'l v. Mack,* 45 F.3d 185 (7th Cir. 1995), we order that until Neuman pays this amount in full, he is hereby barred from filing further civil suits in the courts of this circuit, with the exceptions recognized in *Mack*. Also in keeping with *Mack*, he will be entitled to move for modification of this order after two years from the date of the mandate in this case.