## MICHAEL E. LOVE, Appellant, v. CATHERINE L. LOVE, Respondent.

No. 29729

May 19, 1998

959 P.2d 523

*Ronald J. Logar,* Reno, for Appellant.

*Silverman & Decaria,* Reno, for Respondent.

**OPINION**

By the Court, SHEARING, J.:

Appellant Michael E. Love ("Michael") and respondent Catherine L. Love ("Catherine") were married on September 17, 1981. Seven months later, on April 24, 1982, a child ("the child") was born. Two years after the child's birth, the parties entered into a marital settlement agreement, which was incorporated into a decree of divorce entered on May 22, 1984. Under the settlement agreement, Michael agreed to pay $1,200 per month in child support until the child reached first grade, and $800 per month thereafter. Michael also agreed to pay all reasonable and necessary medical, dental and educational expenses for the child. At the time of the divorce, Michael was in bankruptcy proceedings.

In December 1993, Michael had blood drawn from himself and the child, then eleven years old, for DNA analysis. A DNA analysis laboratory reported that Michael was excluded from being the child's biological father.

Michael's financial circumstances greatly improved after the divorce. In February 1995, Catherine filed a motion to increase child support and for judgment on arrears. Catherine requested that the district court increase child support to $2,000 per month, and order Michael to pay the cost of private school tuition and other educational expenses.

Michael then filed a complaint against Catherine seeking to establish that he had no responsibility to pay child support based upon his allegation that she had fraudulently misrepresented that the child was his. The district court consolidated Catherine's motion and Michael's action.

In August 1995, a second DNA test confirmed that Michael was not the child's biological father. In September 1995, Michael filed a motion for summary judgment to establish that he was not the child's biological father and to set aside the judgment and decree of divorce insofar as they related to child custody, support and maintenance. Catherine opposed the motion, arguing, *inter alia,* that a genuine issue of material fact existed regarding

whether Michael was misled into believing that he was the child's father. Catherine asserted that Michael was aware of the single occasion on which she had sexual intercourse with another potential father, because Michael had participated.

On February 2, 1996, the district court filed an order denying Michael's motion for summary judgment. The order stated:

> A divorce decree that establishes paternity of a child is a final determination of paternity. Harris v. Harris, 95 Nev. 214, 591 P.2d 1147 (1979). . . . In this case, the parties' divorce decree was entered on May 22, 1984 and established paternity. Thus, the issue of paternity of [the child] is *res judicata* as to Plaintiff or Defendant in this or any future proceeding.

On November 25, 1996, the district court filed a written order directing Michael to pay child support of $1,800 per month and to pay educational costs including tuition. The district court also granted attorney fees and costs to Catherine. Michael appeals from this order and from the order denying his motion for summary judgment, which resolved his complaint contesting paternity.[1]

Michael argues that Catherine fraudulently concealed the child's parentage, and therefore, he is not barred by *res judicata* from challenging paternity. He contends that he did not challenge paternity during the original divorce proceedings because he had no reason to suspect that he was not the child's father at that time. Michael also contends that the district court erred in denying his motion for summary judgment because DNA tests prove as a matter of law that he has no legal responsibility for the child.

Catherine argues that the district court properly decided that Michael was barred by *res judicata* from relitigating the paternity issue. She also asserts that she did not fraudulently conceal the child's paternity.

It is generally accepted that decisions as to the paternity of a child, litigated pursuant to a divorce decree, are res judicata as to subsequent proceedings between the parties. *See* Donald M. Zupanec, Annotation, *Effect, in Subsequent Proceedings, of Paternity Findings or Implications in Divorce or Annulment*

---

[1]Although an order denying a motion for summary judgment is ordinarily not a final, appealable order, *see, e.g.,* Taylor Constr. Co. v. Hilton Hotels, 100 Nev. 207, 678 P.2d 1152 (1984), here, the district court's order in effect finally resolved Michael's complaint challenging paternity and is therefore appealable. *See* NRAP 3A.

*Decree or in Support or Custody Order Made Incidental Thereto,* 78 A.L.R. 3d 846, 853 (1977) (Supp. 1997) (citing cases holding same). Indeed, in Harris v. Harris, 95 Nev. 214, 217, 591 P.2d 1147, 1148-49 (1979), this court stated:

> It is generally held that an adjudication incident to a divorce decree concerning the paternity of a child is *res judicata* as to the husband or wife in any subsequent proceeding . . . . Here the paternity issue was pleaded, litigated, and determined in the district court at the original proceedings in 1975. The issue was not novel to these proceedings. Respondent was provided the opportunity at that time to present his evidence, and the decision was against him . . . . We hold that as between the parties a divorce decree establishing the paternity of a child is a final determination which precludes relitigation of the question of paternity.

(Citation omitted.)

However, Michael alleges that he was misled into believing that he was the father of the child. A decision of paternity will not operate as res judicata where extrinsic fraud existed in the original proceeding. Where a claim is fraudulently advanced and that fraud is so successful that the other party is not aware that he has a particular claim or defense, this may be a sufficient basis for equitable relief. Villanon v. Bowen, 70 Nev. 456, 471, 273 P.2d 409, 416 (1954). That which keeps one party away from court by conduct preventing a real trial on the issues is extrinsic fraud and forms a sufficient basis for equitable relief from the judgment. Libro v. Walls, 103 Nev. 540, 543, 746 P.2d 632, 634 (1987); *Villanon,* 70 Nev. at 471, 273 P.2d at 416; Savage v. Salzman, 88 Nev. 193, 195, 495 P.2d 367, 368 (1972); Colby v. Colby, 78 Nev. 150, 153-154, 369 P.2d 1019, 1021 (1962); Murphy v. Murphy, 65 Nev. 264, 271, 193 P.2d 850, 854 (1948).

In *Libro,* 103 Nev. at 541, 746 P.2d at 633, a husband did not challenge paternity during divorce proceedings. After the husband paid child support for thirteen months, blood tests conclusively established that he was not the child's father. The district court ruled that the husband could not raise non-paternity as a defense to a judgment for child support arrearages. *Id.* This court reversed, noting that the wife's failure to notify her husband that he might not be the child's father prevented him from having a fair opportunity to litigate paternity in the divorce proceedings. *Id.* at 543, 746 P.2d at 634.

Michael did not challenge paternity during the original divorce proceedings. In fact, the district court's judgment was based upon a stipulation between the parties whereby they entered into a

settlement agreement. This judgment would ordinarily have a *res judicata* effect between the parties, precluding them from relitigating the issue. Willerton v. Bassham, 111 Nev. 10, 16, 889 P.2d 823, 826 (1995).

However, we conclude that *res judicata* does not necessarily bar Michael from proving nonpaternity because of the possible presence of extrinsic fraud in the original proceeding. A genuine issue of material fact exists as to whether Catherine fraudulently concealed the child's parentage; therefore, disposition by summary judgment is unwarranted. On remand, the district court must, as a threshold matter, determine whether the original judgment was procured by fraud.

Michael argues that the DNA analysis proves as a matter of law that he has no legal responsibility for the child. We have not previously discussed the weight to be given to a DNA analysis in a paternity action. The Nevada legislature addresses paternity in NRS 126.051, which sets forth rebuttable presumptions of paternity. NRS 126.051 states, in pertinent part:

> 1. A man is presumed to be the natural father of a child if:
>
> (a) He and the child's natural mother are or have been married to each other and the child is born during the marriage . . . .
>
> (b) He and the child's natural mother were cohabiting for at least 6 months before the period of conception and continued to cohabit through the period of conception.
>
> (c) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is invalid . . . .
>
> (d) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child.
>
> (e) Blood tests made pursuant to NRS 126.121 show a probability of 99 percent or more that he is the father.
>
> . . . .
>
> 3. A presumption under this section may be rebutted in an appropriate action only by clear and convincing evidence. If two or more presumptions arise which conflict with each other, the presumption which on the facts is founded on the weightier considerations of policy and logic controls. The presumption is rebutted by a court decree establishing paternity of the child by another man.
>
> . . . .

NRS 126.051 does not set forth conclusive presumptions of paternity. Instead, as set forth in section 3, the presumptions enumerated in section 1 may be rebutted. This statutory scheme clearly reflects the legislature's intent to allow nonbiological factors to become critical in a paternity determination. *See* In re Marriage of Freeman, 53 Cal. Rptr. 2d 439, 447 (Ct. App. 1996) (California statute made clear that "biology is not the predominant consideration in determining parental responsibility once a child has reached his or her third year of life."). Thus, where factors conflict, as they may here, the district court must use its discretion to apply considerations of policy and logic to the relevant evidence.[2]

In Michael H. v. Gerald D., 491 U.S. 110 (1989), a California statute provided that "the issue of a wife cohabiting with her husband, who is not impotent or sterile, is conclusively presumed to be a child of the marriage." The United States Supreme Court held that this statute did not infringe upon the due process rights of a natural father seeking to establish paternity, whose blood tests indicated a 98.07% probability of paternity. *Id.* at 118-30; *see also* Dawn D. v. Superior Court, No. S060966, 1998 WL 154536, at *1 (Cal. Apr. 6, 1998).

Thus, the legislature has the power to decide that the results of biological tests do not conclusively determine a paternity action. Nowhere in our statutory scheme does the legislature state that the results of a DNA test compel a district court to determine, as a matter of law, that a man is or is not a child's father. *See* NRS 126.051; NRS 126.121.

Here, pursuant to NRS 126.051(3), the DNA test results create a presumption that conflicts with the presumption of paternity arising from the fact that Michael was married to the child's mother, apparently cohabited with her for one year prior to the child's birth, and held the child out as his own for a number of years. If, on remand, the district court concludes that the judgment was procured by fraud, then the court must determine which presumptions are "founded on the weightier considerations of policy and logic" as required by NRS 126.051(3).

Michael further argues that the district court improperly increased child support to $1,800 monthly without a hearing,

---

[2]The history of NRS 126.051 shows that the legislature's primary interest was in ensuring that children are supported by their parents, and not by welfare. Minutes of the Assembly Judiciary Comm., 60th Leg. (Nev., March 13, 1979).

making findings that are not supported by evidence. Michael argues that the district court improperly based its decision upon his increased wealth. Michael contends that his current monthly payment exceeds the "cap" set forth in NRS 125B.070, and argues that Catherine has failed to produce evidence that the child's needs exceed the cap.

A district court has limited discretion to deviate from child support guidelines set forth in NRS 125B.070.[3] Anastassatos v. Anastassatos, 112 Nev. 317, 320, 913 P.2d 652, 654 (1996). Any deviation from the formula set forth in NRS 125B.070 must be based upon the factors provided under NRS 125.080(9).[4] Id. at 320, 913 P.2d at 654. "Greater weight . . . must be given to the standard of living and circumstances of each parent, their earning capacities and the 'relative financial means of parents' than to any of the other factors." Barbagallo v. Barbagallo, 105 Nev. 546, 551, 779 P.2d 532, 536 (1989).

In Herz v. Gabler-Herz, 107 Nev. 117, 808 P.2d 1 (1991), the district court found that appellant had vastly greater wealth than respondent. This court held that the district court did not abuse its discretion in ordering an upward departure from the statutory formula based on a factor other than increased need. Id. at 119, 808 P.2d at 1; accord Chambers v. Sanderson, 107 Nev. 846, 822 P.2d 657 (1991).

[3]NRS 125B.070 provides in part:
 1(b) "Obligation for support" means the amount determined according to the following schedule:
 (1) For one child, 18 percent; . . . of a parent's gross monthly income, but not more than $500 per month per child for an obligation for support . . . unless the court sets forth findings of fact as to the basis for a different amount pursuant to subsection 6 of NRS 125B.080.

[4]NRS 125B.080(9) states:
 The court shall consider the following factors when adjusting the amount of support of a child upon specific findings of fact:
 (a) The cost of health insurance;
 (b) The cost of child care;
 (c) Any special educational needs of the child;
 (d) The age of the child;
 (e) The responsibility of the parents for the support of others;
 (f) The value of services contributed by either parent;
 (g) Any public assistance paid to support the child;
 (h) Any expenses reasonably related to the mother's pregnancy and confinement;
 (i) The cost of transportation of the child to and from visitation if the custodial parent moved with the child from the jurisdiction of the court which ordered the support and the noncustodial parent remained;
 (j) The amount of time the child spends with each parent;
 (k) Any other necessary expenses for the benefit of the child; and
 (l) The relative income of both parents.

In the present case, the district court based its order to increase child support upon the vast difference in the parties' financial resources and the increased expenses of a teenager.

Michael argues that Catherine is not paying her share of the child's expenses. This argument is without merit.

> Child support is not calculated as a supplement to the presumably inadequate means of the custodial parent. NRS 125B.070 specifies a parent's duty of child support according to the parent's means rather than according to the child's needs. Although the ultimate policy objective may be the welfare of the child, the legislative scheme implements this policy by focusing the court's attention upon a parent's statutory duty to provide a fixed percentage of his income as support.

Lewis v. Hicks, 108 Nev. 1107, 1113, 843 P.2d 828, 832 (1992). We conclude that the district court properly considered Michael's financial circumstances in departing from the statutory child support formula.

The court made its decision without a hearing. However, the parties do not dispute that Michael's earnings are much greater than Catherine's, and Michael stipulated that he could pay any reasonable amount of child support. We conclude that the district court did not abuse its discretion in departing from the statutory child support formula and ordering a modification of child support to $1,800 per month based on the factors stated by the court.

Michael also argues that the district court abused its discretion in ordering him to pay for private school without first holding an evidentiary hearing. The parties' marital settlement agreement stated in part:

> (2) As and for additional child support, HUSBAND shall pay all reasonable and necessary medical, dental and educational expenses of the minor child from the date of execution of this Agreement and continuing thereafter until such time as HUSBAND's obligation to support said child shall cease.

Michael contends that because the term "educational expenses" in the parties' marital settlement agreement is unclear, he should be permitted to introduce parol evidence that the parties did not intend "educational" to include private education.

Where language in a document is clear and unambiguous on its face, the court must construe it based on this plain language. Southern Trust v. K & B Door Co., 104 Nev. 564, 763 P.2d 353

(1988). We perceive no ambiguity in the marital settlement agreement regarding this issue so as to require an evidentiary hearing. Tuition clearly falls within the term educational expenses. The agreement does not state that "reasonable and necessary . . . educational expenses" cannot include private school tuition. The fact that the child attended public school for several years does not alter the provision. Accordingly, we conclude that the district court did not err in declining to hold a hearing on this issue. We further conclude that the district court properly exercised its discretion in ordering Michael to pay private school tuition.

Michael argues that the district court abused its discretion in awarding attorney fees, and in permitting Catherine to submit a sealed statement of attorney fees. Michael contends that NRS 18.010(2)(b)[5] only permits an award of attorney fees to a prevailing party, which Catherine was not. Michael contends that the court did not find that his action was brought without reasonable grounds or that he acted to harass Catherine.

Michael contends that he should be afforded an opportunity to dispute fees related to a bogus claim which may be included in the sealed statements. Catherine argues that the billing statements contained privileged information; therefore, the district court properly reviewed them *in camera*.

The district court's order and judgment did not state the basis for its award of attorney fees and costs. In the present case, NRS 18.010(2)(b) is not the only statute that could have served as a basis for the fees. NRS 125.150(3) states:

> Whether or not application for suit money has been made under the provisions of NRS 125.040, the court may award a reasonable attorney's fee to either party to an action for divorce if those fees are in issue under the pleadings.

*See* Leeming v. Leeming, 87 Nev. 530, 490 P.2d 342 (affirming award of attorney fees for post-judgment motion in divorce action); *cf.* Korbel v. Korbel, 101 Nev. 140, 696 P.2d 993 (1985). Such an award is within the sound discretion of the

---

[5]NRS 18.010(2) states, in pertinent part:

2. In addition to the cases where an allowance is authorized by specific statute, the court may make an allowance of attorney's fees to a prevailing party:

. . . .

(b) Without regard to the recovery sought, when the court finds that the claim, counterclaim, cross-claim or third-party complaint or defense of the opposing party was brought without reasonable ground or to harass the prevailing party.

district court. Fletcher v. Fletcher, 89 Nev. 540, 543-44, 516 P.2d 103, 104 (1973).

However, because the billing statements were sealed and the district court reviewed them in camera, this court is unable to assess the validity of the award of attorney fees. We conclude that to grant attorney fees based upon sealed billing statements unfairly precluded Michael from disputing the amount and legitimacy of the award. We, therefore, reverse the award of attorney's fees and remand with instructions to the district court to allow Michael to review and dispute expenses contained within the billing statement.

The district court erred in concluding that paternity was conclusively established on the basis of *res judicata* without a factual determination as to whether the original judgment was procured by fraud. Therefore, we reverse the order of the district court resolving appellant's paternity complaint, and remand this matter to the district court for further proceedings consistent with this opinion. Pending the district court's further decisions, we perceive no abuse of discretion in the district court's continuing to require Michael to pay increased child support and private tuition.

ROSE, YOUNG, and MAUPIN, JJ., concur.

SPRINGER, C. J., concurring in part and dissenting in part:

I agree that *res judicata* does not bar Mr. Love from denying paternity; however, I dissent from this court's requiring him to pay child support and tuition under the circumstances of this case.