131 Nev., Advance Opinion 8

IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE ESTATE OF ROBERT C. MURRAY, DECEASED.

POLLY O'NEAL AND GARY STINNETT,
Appellants,
vs.
JOYCE SLAUGHTER,
Respondent.

No. 63284

FILED

MAR 05 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order appointing respondent as the administrator of the decedent's estate in a probate proceeding. Eighth Judicial District Court, Clark County; Gloria Sturman, Judge.

*Affirmed.*

Lawyerswest, Inc., and Robert C. Graham, Las Vegas,
for Appellants.

Denton Lopez & Cho and Alice S. Denton and Jarien L. Cho, Las Vegas,
for Respondent.

BEFORE HARDESTY, C.J., DOUGLAS and CHERRY, JJ.

*OPINION*

By the Court, CHERRY, J.:

This appeal requires us to decide whether, in a probate proceeding, the parentage of a potential heir can be contested under NRS Chapter 132, Nevada's probate statutes, or NRS Chapter 126, the Nevada

7/21/15: Corrected per letter to publishers. CT

15-06880

Parentage Act. We hold that the Nevada Parentage Act controls for parentage determinations, including determinations sought for probate matters. NRS 126.071(1) limits those who can make challenges under the Parentage Act to interested parties, however, which appellants are not. Further, under NRS 126.081(1), any challenge to parentage is barred if made more than three years after the child reaches the age of majority. In the instant case, NRS 126.081 precludes appellants from contesting the heir's parentage because more than three years have passed since the heir reached the age of majority.

## FACTS AND PROCEDURAL HISTORY

Respondent Joyce Slaughter, the claimed heir, was born on January 26, 1949, in Wabbaseka, Arkansas. Her delayed birth certificate, issued by the State of Arkansas on July 15, 1952, identifies her as "Joyce Ann Murray"; the decedent, Robert Murray, as "Father"; and Margaret Polk as "Mother."[1] Robert was 17 years old when Joyce was born, and under Arkansas law, he could not marry without parental consent. After Robert turned 19, he married then-21-year-old Margaret in Jefferson County, Arkansas. Robert and Margaret moved to Las Vegas, Nevada, in the early 1950s, where together they raised Joyce. The couple remained married until Margaret's death in 1990. In his lifetime, Robert never commenced proceedings to formally establish or challenge his status as Joyce's father.

---

[1]The delayed birth certificate was notarized on July 15, 1952, but the notary indicated on the birth certificate that her commission expired on July 7, 1952.

Robert died intestate in August 2012 in Las Vegas at the age of 80. The assets of his estate were derived from his and Margaret's nearly 40-year marriage. His obituary identified Joyce as his sole living child, and Joyce arranged and paid for Robert's funeral services.

Nevertheless, a few months later, Robert's sister and nephew, appellants Polly O'Neal and Gary Stinnett, respectively, filed an ex parte petition for appointment as special administrators of Robert's estate. The ex parte petition identified Robert's siblings and their issue as his heirs under NRS 134.060 (stating that when there exists no issue, surviving spouse, or father or mother, a decedent's estate goes to the decedent's siblings and their issue); Joyce was identified as Robert's stepdaughter. The district court entered an order making appellants co-administrators of the estate.

*Probate proceedings*

Upon learning of appellants' appointment, Joyce filed a petition for revocation of the letters of special administration and for appointment as the special administrator. Joyce asserted that appellants' appointment was the product of a misrepresentation to the court, namely, that she was the decedent's "stepdaughter," rather than his daughter. Joyce also argued that, as Robert's child, she had priority in appointment. Joyce attached to the petition a certified copy of her Arkansas delayed birth certificate and her affidavit. Joyce later provided affidavits from her mother's siblings, which stated that their sister and the decedent had held themselves out as a married couple when Joyce was born and that the decedent had always treated Joyce as his daughter.

Appellants responded to Joyce's petition for revocation and argued that the Arkansas birth certificate was invalid; that Joyce's claim

of paternity did not satisfy Nevada's Parentage Act, NRS Chapter 126; that Joyce knew that she was not the decedent's biological child; and that DNA testing was necessary to confirm biological parentage. Noting that stepchildren are not entitled to inherit under Nevada's probate statutes, NRS 132.055, appellants attached affidavits from various members of Robert's family stating that Joyce was Robert's stepdaughter and that she was aware of that fact.

At a hearing, the probate commissioner explained that the delayed birth certificate must be given full faith and credit and that, absent fraud, Robert was the only individual with a right to fight the birth certificate. After the hearing, the probate commissioner issued a report and recommendation that determined that (1) Joyce's Arkansas delayed birth certificate was entitled to full faith and credit in Nevada; (2) a legal presumption arose that Joyce was the decedent's child under NRS 126.051(1)(c) and (d) because Robert and Margaret had resided together with Joyce and held themselves out to be husband and wife, and because Robert had received Joyce into his home, held her out to be his natural child, and allowed her to be known by his surname; (3) Robert's siblings lacked standing to contest Joyce's paternity pursuant to NRS 126.071(1); and (4) Robert's siblings were time-barred from contesting Joyce's paternity pursuant to NRS 126.081(1). Accordingly, the probate commissioner suggested that the district court find that Joyce is Robert's child and entitled to appointment as administrator.

Appellants objected to the probate commissioner's report and recommendation. At the district court's hearing, appellants argued for an evidentiary hearing and asserted that discovery was ongoing. The district court explained that appellants needed to overcome the standing and

timeliness issues before an evidentiary hearing could be considered. The district court then entered an order finding that the commissioner's recommendations were not clearly erroneous and ordered that the report and recommendation be fully accepted and adopted. This appeal followed.

## DISCUSSION

In this appeal, we examine whether issues concerning Joyce's parentage for inheritance purposes are governed by the probate statutes of NRS Chapter 132 or by the parentage statutes of NRS Chapter 126. After determining which set of statutes applies, we consider whether appellants met the standing and timing requirements for contesting parentage under those statutes.

We review questions of statutory interpretation and other legal issues de novo. *Rennels v. Rennels*, 127 Nev. ___, ___, 257 P.3d 396, 399 (2011). Our goal in interpreting statutes is to effectuate the Legislature's intent. *Salas v. Allstate Rent-A-Car, Inc.*, 116 Nev. 1165, 1168, 14 P.3d 511, 513 (2000). To do so, "this court must give [a statute's] terms their plain meaning, considering its provisions as a whole so as to read them in a way that would not render words or phrases superfluous or make a provision nugatory." *S. Nev. Homebuilders v. Clark Cnty.*, 121 Nev. 446, 449, 117 P.3d 171, 173 (2005) (internal quotation omitted). In addition, "when separate statutes are potentially conflicting, [this court] attempt[s] to construe both statutes in a manner to avoid conflict and promote harmony." *Beazer Homes Nev., Inc. v. Eighth Judicial Dist. Court*, 120 Nev. 575, 587, 97 P.3d 1132, 1140 (2004).

Under the probate statutes, when there is no surviving spouse, an intestate decedent's estate succeeds to the decedent's child. NRS 134.090. "Child" is circularly defined as "a person entitled to take as

a child by intestate succession . . . and excludes a person who is a stepchild." NRS 132.055. No other probate statute further governs the determination of who is a child entitled to succeed to her father's estate. Accordingly, we must look elsewhere to determine whether Joyce was Robert's child for inheritance purposes.

*Nevada's Parentage Act*

We have explained that, "[t]o determine parentage in Nevada, courts must look to the Nevada Parentage Act, which is modeled after the Uniform Parentage Act (UPA). The Nevada Parentage Act is 'applied to determine legal parentage.'" *St. Mary v. Damon*, 129 Nev. ___, ___, 309 P.3d 1027, 1031 (2013) (quoting *Russo v. Gardner*, 114 Nev. 283, 288, 956 P.2d 98, 101 (1998)). Nevada's Parentage Act provides rules and methods for establishing paternity for "all persons, no matter when born." NRS 126.011.

NRS 126.021(3) provides that a "'[p]arent and child relationship' means the legal relationship existing between a child and his or her natural or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations. It includes the mother and child relationship and the father and child relationship." Although Nevada's Parentage Act was adopted in large part for reasons relating to the financial support of children, *see* NRS Chapter 126 reviser's notes; *Willerton v. Bassham*, 111 Nev. 10, 19-20, 889 P.2d 823, 828-29 (1995), we have previously recognized that minor children have "legal interests that flow from a determination of paternity beyond the right to collect support. Such interests include . . . the right to an inheritance." *Willerton*, 111 Nev. at 21-22, 889 P.2d at 830. Indeed, we have referred to the parentage statutes in determining heirship in the past. *See In Re Parrott's Estate*, 45



Nev. 318, 329, 203 P. 258, 260 (1922) (proceeding with the question of unintentional omission from a will based on an objection sufficient to show that the objector was the deceased's child under a former parentage statute).

We acknowledge that, under the parentage statutes, "a determination of parentage rests upon a wide array of considerations rather than genetics alone." *St. Mary*, 129 Nev. at ___, 309 P.3d at 1032 (citing *Love v. Love*, 114 Nev. 572, 578, 959 P.2d 523, 527 (1998) (providing that the Nevada Parentage Act "clearly reflects the legislature's intent to allow nonbiological factors to become critical in a paternity determination")). A man may be legally presumed to be a child's father if, for example, "[w]hile the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child." NRS 126.051(1)(d). Further, presumably to promote early establishment of the filial relationship and family stability, Nevada's Parentage Act contains limitations on who can bring an action and when that action can be brought, and these provisions do not fit neatly into the structure of a probate proceeding. *See* NRS 126.071 (a child, natural mother, presumed and alleged fathers, and interested third parties may bring action); NRS 126.081 (action to declare existence or nonexistence of filial relationship must be brought within three years of child's attaining age of majority); NRS 126.101 (natural mother and presumed father must be made parties).

Even so, we believe that the Legislature, by adopting the UPA and failing to provide any independent means of determining parentage for inheritance purposes, intended for Nevada's parentage statutes to

Supreme Court
OF
Nevada

(O) 1947A

7

apply in these circumstances.[2] We are not persuaded that the manner in which a child's paternity is determined should change simply because a party is involved in a probate dispute instead of a custody or support dispute. We believe that deferring to the parentage act will equitably resolve paternity disputes when conflicts arise between presumptive and biological paternity in probate proceedings.

In so concluding, we are further persuaded by the reasoning in *In re Estate of Jotham*, 722 N.W.2d 447, 449-59 (Minn. 2006). In that case, the decedent's then-ex-wife gave birth to a second daughter 279 days after the parties' divorce. *Id.* at 449. The second daughter's birth certificate identified the decedent as her father, but paternity was not adjudicated and the decedent never acknowledged paternity in any written form. *Id.* Over 50 years later, the decedent died intestate. *Id.* His earlier-born daughter then challenged the status of the later-born daughter and sought to introduce evidence to rebut the statutory presumption that the later-born woman was also the decedent's daughter because she was born within 280 days of termination of the parties' marriage. *Id.* She argued that she was "simply litigating heirship in a

_____

[2]In fact, the Legislature was expressly aware of the connection between the parentage statutes and the probate statutes. NRS 126.081(2) recognizes that, notwithstanding the parentage statutes, claims of "a right of inheritance or a right to a succession" must be asserted within "the time provided by law relating to distribution and closing of decedents' estates." NRS 126.091(3) provides that an action may be brought in the county in which a deceased alleged father's probate proceedings have been commenced. When a parentage issue arises in a probate proceeding, we see no reason to require the questions of standing and timing to proceed in a separate action under the Nevada Parentage Act. *Cf.* NRS 126.091(1) (stating that actions under the Parentage Act may be combined with actions for divorce, annulment, separate maintenance, or support).

probate proceeding," and thus, the proceeding was beyond the scope of the Minnesota Parentage Act. *Id.* at 451.

The district court concluded that the statute of limitations in Minnesota's Parentage Act barred the decedent's earlier-born daughter from challenging the paternity presumption. *Id.* at 449-50. The court of appeals determined that the Parentage Act's statute of limitations did not apply in a probate proceeding and reversed based on error in failing to consider evidence offered to rebut the paternity presumption. *Id.* (citing *In re Estate of Jotham*, 704 N.W.2d 210, 215 (Minn. Ct. App. 2005)).

The Minnesota Supreme Court disagreed with the court of appeals, concluding that "the probate court must apply the Parentage Act in its entirety to determine paternity for purposes of intestate succession." *Id.* at 453. The court consequently determined that the earlier-born daughter did not meet the standing and timeliness requirements set forth in the Minnesota Parentage Act. *Id.* at 457. The court explained that, while "[t]he Parentage Act permits presumptions of paternity to be rebutted in 'an appropriate action' by clear and convincing evidence[,]"[3] this ambiguous term, "an appropriate action," is not defined. *Id.* at 454 (quoting Minn. Stat. § 257.55). Looking to the Minnesota Legislature's probable intent, the court noted that this term was likely meant to "restrict the circumstances in which a presumption of paternity under the Parentage Act may be rebutted." *Id.*

---

[3]NRS 126.051(3) also provides that once a presumption of paternity is created under NRS 126.051(1), this presumption may "be rebutted in an appropriate action only by clear and convincing evidence."

The court noted that interpreting "an appropriate action" in a manner that allows suits which do not satisfy standing and timeliness requirements would frustrate one of the primary purposes of the act—establishing parent-child relationships. *Jotham*, 722 N.W.2d at 455. The court also noted such a rule would conflict with public policy favoring presumptions of legitimacy and preserving family integrity. *Id.* Moreover, the court explained,

> [w]e do not believe that the legislature, which has unmistakably expressed its desire to foster and protect a child's legitimacy, meant in section 257.55 to permit an individual to challenge a sibling's parentage more than 50 years after her birth. Such belated challenges would be destructive of family harmony and stability and would undermine familial relationships long presumed to exist.

*Id.* Accordingly, the court held that "a Parentage Act paternity presumption may be rebutted only by one who meets the standing and timeliness requirements for an action to declare the nonexistence of the presumed father-child relationship." *Id. See also Garris v. Cruce*, 404 So. 2d 785 (Fla. Dist. Ct. App. 1981) (holding that a claimed heir's failure to bring an action for the determination of paternity within the statutory time limit for such actions barred her claim of heirship); *Estate of Lamey v. Lamey*, 689 N.E.2d 1265, 1269 (Ind. Ct. App. 1997) (concluding that there is not any "practical difference" between an action to determine paternity and an action to determine heirship and holding that a third party who is not asserting paternity cannot challenge paternity to determine heirship).

Like the Minnesota Supreme Court, we conclude that the Nevada Parentage Act applies to parentage challenges in Nevada probate proceedings. Our conclusion is supported by the principle goal of intestacy law—"to effectuate the decedent's likely intent in the distribution of his property." Megan Pendleton, *Intestate Inheritance Claims: Determining a Child's Right to Inherit When Biological and Presumptive Paternity Overlap*, 29 Cardozo L. Rev. 2823, 2826 (2008). We therefore hold that paternity contests in intestacy proceedings are governed by the Nevada Parentage Act.

*Standing and timeliness requirements*

The Nevada Parentage Act limits those who may initiate a paternity action. *See* NRS 126.071(1). Only "[a] child, his or her natural mother, a man presumed or alleged to be his or her father or *an interested third party*" has standing. *Id.* (emphasis added). Here, it is potential heirs who challenge paternity. Consequently, we must interpret the meaning of "an interested third party" in this context.

In the legal sense, "interested party" has been defined as someone who "has a recognizable stake (and therefore standing) in a matter." *Black's Law Dictionary* 1232 (9th ed. 2009). In a paternity action, this would generally be someone with a direct personal stake, either financial or social, in establishing or disestablishing the relationship. *See generally Matter of Paternity of Vainio*, 943 P.2d 1282, 1286 (Mont. 1997) (noting that, although "any interested party" may bring a paternity action under Montana statutes, the party must have a personal stake in the outcome of the controversy, and thus siblings had no standing to establish or contest the paternity of another sibling because any such determination would not affect their relationship).

Further, the person contesting paternity must bring the action within the period allowed by the Nevada Parentage Act. *See* NRS 126.081. The relevant statute of limitations for parentage contests is NRS 126.081(1). NRS 126.081(1) provides that "[a]n action brought under this chapter to declare the existence or nonexistence of the father and child relationship is not barred until 3 years after the child reaches the age of majority."

Here, Joyce is entitled to a presumption of paternity under NRS 126.051(1)(d), at least, because she demonstrated that, during her minority, Robert received her into his home and openly held her out as his natural child. While appellants contend that they should be allowed to rebut that presumption and any presumption attaching to Joyce's birth certificate, appellants' challenge to Joyce's parentage comes more than three years after Joyce reached the age of majority. Moreover, appellants do not seek to assert paternity and have asserted no other personal interest in determining the nonexistence of Joyce and Robert's filial relationship. They seek to illegitimatize her solely to make themselves eligible to inherit Robert's estate. *See In re Trust Created by Agreement Dated Dec. 20, 1961*, 765 A.2d 746, 756-57 (N.J. 2001) (citing *Knauer v. Barnett*, 360 So. 2d 399 (Fla. 1978), and other cases for the proposition that third parties should not be allowed to challenge presumptive legitimacy, at least when established by acknowledgment, agreement, or decree, and noting that this proposition is supported by the policies underlying parentage acts). Accordingly, we conclude that appellants are time-barred by NRS 126.081(1) and lack standing under NRS 126.071(1) to challenge Joyce's paternity. *Jotham*, 722 N.W.2d at 455.

## CONCLUSION

Although the Nevada Parentage Act applies to paternity questions arising during probate proceedings, here, appellants are time-barred by, and lack standing under, that Act to challenge Joyce's presumptive paternity. Further, we have considered appellants' remaining arguments and conclude that they are without merit. Thus, for the reasons set forth above, we affirm the decision of the district court.

_____Cherry_____, J.
Cherry

We concur:

_____Hardesty_____, C.J.
Hardesty

_____Douglas_____, J.
Douglas