138 Nev., Advance Opinion 49

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ROSIE M.; AND HENRY O., Appellants, vs. IGNACIO A., JR., Respondent. | No. 83023 **FILED** JUN 30 2022 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY ____ CHIEF DEPUTY CLERK |

Appeal from a district court order in a paternity and child custody matter. Eighth Judicial District Court, Family Court Division, Clark County; Nadin Cutter, Judge.

*Affirmed.*

Page Law Firm and Fred C. Page, Las Vegas,
for Appellants.

McFarling Law Group and Emily McFarling, Las Vegas,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

The Nevada Parentage Act (NPA), contained in NRS Chapter 126, provides the framework by which a person may establish legal parentage of a child. NRS Chapter 125C, in turn, governs child custody and visitation issues, with the best interest of the child guiding the court's decision in such matters. Appellants argue that the district court

misinterpreted and misapplied the NPA in concluding that respondent has legal parental rights as to the minor child at issue solely because conclusive DNA test results show that respondent is the child's biological father. Appellants also challenge the district court's resultant child custody decision awarding respondent joint physical custody with the child's mother, arguing that, in addition to being based on an erroneous parentage decision, the court failed to apply the relevant provisions of NRS Chapter 125C and failed to make on-the-record factual findings to support its assessment of the child's best interest in determining physical custody and parenting time.

We affirm. As to the parentage issue, the district court correctly interpreted and applied the NPA in concluding that respondent is conclusively presumed to be the child's legal father based on positive DNA test results and that his status as such gives him rights incident to a parent and child relationship. The district court's finding of paternity authorized it, under NRS 126.161(4), to make an initial determination of custody as between the child's mother and his biological father. The district court's order establishing joint physical custody comported with the record evidence and the preferences stated in NRS Chapter 125C.

*FACTS AND PROCEDURAL HISTORY*

Appellants Rosie M. and Henry O. were in an off-and-on relationship between 1999 and 2017, residing together part of that time. Rosie was also in an off-and-on relationship with respondent Ignacio A., Jr., between 2008 and approximately 2019. Rosie was never married to either Henry or Ignacio.

In 2011, Rosie became pregnant with A.A., the minor child over whom the parties dispute paternity and custody. When A.A. was born, Rosie and Henry executed a Voluntary Acknowledgment of Paternity (VAP)

declaring Henry the only possible father, and Henry was named as the father on A.A.'s birth certificate. Despite a request from Ignacio, Rosie and Henry declined to pursue testing to establish the paternity of A.A.

In 2013, Rosie gave birth to a second child, J.A. Approximately six months after J.A.'s birth, Rosie informed Ignacio that he may be J.A.'s father. Ignacio filed a complaint for custody and was determined to be J.A.'s biological father through paternity testing. A stipulated decree was entered for custody and visitation of J.A.

During his time with J.A., Ignacio had contact with A.A. Ignacio again questioned Rosie about whether he may be A.A.'s father, and Rosie again denied that Ignacio could be A.A.'s father. Henry provided Ignacio with a screenshot of a purported DNA test showing Henry as A.A.'s father. However, Ignacio thought the formatting of the DNA test results looked suspicious. Ignacio completed DNA testing on his own with A.A. and provided the results showing he was A.A.'s biological father to Rosie in early 2017. Rosie did not believe the results, so Ignacio took another test confirming he was A.A.'s father. Despite the results, Rosie continued to deny Ignacio regular visits with A.A.

Ignacio then filed an amended complaint for custody, asserting he was also the father of A.A. Ignacio requested a paternity determination regarding A.A., that A.A.'s name and birth certificate be amended, and that he be awarded joint physical and legal custody of A.A.[1] Ignacio moved to join Henry as a defendant for the limited purpose of determining paternity of A.A. The district court added Henry as a third-party defendant but found "that [Ignacio's] paternity challenge was barred because [A.A.] was over

---

[1] Ignacio also sought to amend the custody decree as to J.A., but custody of J.A. is not at issue in this appeal.

three years old, [Ignacio] failed to demonstrate clear and convincing evidence of fraud, and his claims were barred by claim preclusion."

Ignacio appealed, and we reversed, concluding that the district court improperly denied Ignacio's request for court-ordered paternity testing, and remanded the matter for such testing. *Ignacio A. v. Rosie M.*, No. 77242, 2020 WL 403670 (Nev. Jan. 23, 2020) (Order of Reversal and Remand). We instructed that if Ignacio was found to be A.A.'s biological father, the district court must determine the issue of paternity based on the procedures set forth in NRS Chapter 126.

On remand, the district court ordered DNA testing regarding A.A., and Ignacio was found to be A.A.'s biological father. At a hearing following the return of the DNA results, the district court set aside its previous order. Following an evidentiary hearing,[2] the district court found that Ignacio is conclusively the biological and legal father of A.A. The court further found that it did not have enough evidence to conclude that Henry presented a fraudulent paternity test to Ignacio but determined that Henry's VAP for A.A. resulted from either a material mistake of fact or fraud. The court determined that the conclusive presumption set forth in NRS 126.051(2) regarding biological testing overcame Henry's VAP and that a paternity dispute such as this one is not time-barred until the child reaches the age of 21. The district court entered a written order concluding "that Ignacio is confirmed as [A.A.]'s father[,]" "that A.A.'s name shall be changed and his birth certificate shall be amended to reflect Ignacio's last name[,]" and "that Ignacio and Rosie shall have joint physical custody of [A.A.], with Ignacio's timeshare to begin immediately." The court further

---

[2]Before this hearing, the matter was reassigned from Judge Gerald W. Hardcastle to Judge Nadin Cutter.

found that this ruling meant "Henry is now considered a third party in this matter" who may, if he so elects, request visitation with A.A. "akin to grandparent visitation." This joint appeal by Rosie and Henry followed.

## DISCUSSION

*The district court correctly interpreted and applied the NPA in determining that Ignacio is A.A.'s legal father*

Rosie and Henry contend the district court improperly found Ignacio to be A.A.'s legal father, asserting the court failed to distinguish between biological and legal paternity. They argue that the district court erred by incorrectly giving greater weight to biology to determine Ignacio is A.A.'s legal father. Relying largely on California caselaw and *Love v. Love*, 114 Nev. 572, 959 P.2d 523 (1998), Rosie and Henry claim that once a child reaches the age of three years, absent clear and convincing evidence of fraud, biology ceases to be the predominant consideration for determining paternity. Furthermore, they maintain that pursuant to NRS 440.610, a person listed as the father on the birth certificate is presumed to be the father of the child if paternity becomes disputed.

We give deference to a district court's factual findings and will not set aside those findings unless they are clearly erroneous or not supported by substantial evidence; however, questions of law are subject to our plenary review. *Ogawa v. Ogawa*, 125 Nev. 660, 668, 672, 221 P.3d 699, 704, 707 (2009); *see also Waldman v. Maini*, 124 Nev. 1121, 1136, 195 P.3d 850, 860 (2008) (providing that issues of statutory interpretation are legal questions reviewed de novo).

To determine parentage, courts look to the NPA, codified at NRS 126.011-.900. *St. Mary v. Damon*, 129 Nev. 647, 652, 309 P.3d 1027, 1031 (2013). Under NRS 126.021(3), a "'[p]arent and child relationship' means the legal relationship existing between a child and his or her natural

Supreme Court of Nevada



or adoptive parents incident to which the law confers or imposes rights, privileges, duties and obligations. It includes the mother and child relationship and the father and child relationship."[3] A man can establish this "parent and child relationship" by meeting the conditions for a presumption of paternity. *See* NRS 126.041(2)(a) ("The parent and child relationship between a child and . . . man may be established . . . [u]nder this chapter . . .").

In a paternity dispute, NRS 126.051 controls. *Russo v. Gardner*, 114 Nev. 283, 289, 956 P.2d 98, 102 (1998). Paternity is presumed either rebuttably or conclusively when a man meets certain conditions under NRS 126.051. First, under subsection 1, "[a] man is [rebuttably] presumed to be the natural father of a child if" he and the child's natural mother were married or attempted to get married; "[h]e and the child's natural mother were cohabiting for at least 6 months before the period of conception and continued to cohabit through the period of conception"; or "[w]hile the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child." NRS 126.051(1). These presumptions may be rebutted by clear and convincing evidence in a proceeding challenging paternity and are "rebutted by a court decree establishing paternity of the child by another man." NRS 126.051(3). Second, under subsection 2, "[a] conclusive presumption that a man is the

---

[3]As of June 2021, Nevada law recognizes that a child may have a legal "parent and child relationship" with more than two persons. *See* 2021 Nev. Stat., ch. 512, § 3, at 3401 (amending NRS 126.021(3) to include the following language: "This subsection does not preclude a determination by a court that a child has such a legal relationship with more than two persons."). The district court rendered its decision before this statute's effective date, and the parties do not address it on appeal.

natural father of a child is established if tests for the typing of blood or tests for genetic identification . . . show a probability of 99 percent or more that he is the father . . . ." NRS 126.051(2).[1]

We conclude that the district court properly applied NRS 126.051(2) in determining that the court-ordered DNA test conclusively established Ignacio as A.A.'s natural father. We further conclude that the court properly interpreted the NPA in determining that Ignacio's status as the child's natural father proved a legal parent and child relationship, entitling Ignacio to parental rights with A.A.

Rosie and Henry fail to establish a legal or factual basis to disturb the district court's parentage determination. First, they do not dispute that the genetic test results establish that Ignacio is the child's natural father. Instead, Rosie and Henry rely on California statutes and caselaw in arguing that once a child reaches the age of three years, DNA testing no longer provides a presumption of paternity. But those authorities are inapposite, as the NPA directly addresses the circumstances here and permits Ignacio to rely on the conclusive genetic test results to establish a father and child relationship with A.A. Specifically, NRS 126.071(1) allows an alleged father, such as Ignacio, to bring an action under the NPA to declare the existence of the father and child relationship, and under NRS 126.081(1), such an action "is not barred until 3 years after the child reaches the age of majority." Ignacio filed his complaint well before that deadline. As to the parentage determination, NRS 126.051(2) provides a conclusive presumption of paternity based on positive genetic test results, and

---

[1] The presumption under subsection 2 may be rebutted only if the man has an identical sibling who may be the father, which is not a factor in this case.

paternity gives rise to a parent and child relationship with corresponding rights under NRS 126.021(3).

Second, Rosie and Henry cite *Love* for the proposition that DNA testing confirming a man as a child's natural father is only *a factor* in determining parentage and argue that the district court gave too much weight to that factor here. When we decided *Love*, however, positive genetic test results provided only a rebuttable presumption of paternity. *See* NRS 126.051 (1995). Citing the then-effective version of the statute, we explained that "[n]owhere in our statutory scheme does the legislature state that the results of a DNA test compel a district court to determine, as a matter of law, that a man is or is not a child's father." *Love*, 114 Nev. at 578, 959 P.2d at 527. However, in 2007, the Nevada Legislature amended NRS 126.051 to provide that positive genetic test results are conclusive on the paternity issue. *See* 2007 Nev. Stat., ch. 337, § 1, at 1524. Consequently, a positive DNA test result is no longer simply *a factor* for the district court to weigh in determining paternity, and *Love* no longer controls to the extent that it conflicts with NRS 126.051(2)'s conclusive presumption of paternity based on such results.

Finally, Rosie and Henry misconstrue NRS 440.610 in arguing that A.A.'s birth certificate is dispositive evidence of Henry's paternity. While Rosie and Henry correctly point out that NRS 440.610 provides that a birth certificate "shall be prima facie evidence of the facts therein stated," they fail to address the remainder of the statute, which provides that if an alleged father was not the spouse of the person who gave birth, "the data pertaining to the parent who did not give birth to a child is not such evidence in any civil or criminal proceeding adverse to the interests of the alleged father . . . if the paternity is controverted." Henry and Rosie were never

Supreme Court
of
Nevada

8

married to each other, and Ignacio petitioned the court for a determination of paternity, controverting Henry's paternity of A.A. Thus, Henry's name on A.A.'s birth certificate is not dispositive on the issue of paternity.

Based upon the foregoing, the district court properly determined that under NRS 126.051(2), the conclusive presumption of Ignacio's paternity cannot be rebutted. *See also Presumption, Black's Law Dictionary* (11th ed. 2019) (defining a conclusive presumption as "[a] presumption that cannot be overcome by any additional evidence or argument because it is accepted as irrefutable proof that establishes a fact beyond dispute"). And under Nevada's statutory scheme, because Ignacio is the natural father of A.A. and has not had his rights restricted or terminated, he has a "parent and child relationship," "incident to which the law confers or imposes rights, privileges, duties and obligations." NRS 126.021(3). Therefore, we conclude that the district court properly interpreted and applied the NPA in determining that Ignacio is A.A.'s natural father with legal rights attendant to a parent and child relationship.[3]

*The district court was not required to engage in an* Ellis v. Carucci *analysis and appropriately awarded joint physical custody to Ignacio and Rosie*

Rosie and Henry contend the district court erred by failing to make a custody modification determination under *Ellis v. Carucci*, 123 Nev.

---

[3]Rosie and Henry additionally argue that the district court exceeded the scope of remand by considering the issue of fraud. We disagree. The district court merely followed the procedures set forth in NRS Chapter 126, as we instructed, to determine paternity and considered Ignacio's challenge to the VAP in doing so. This was appropriate. *See* NRS 126.053(3) (providing that a signed VAP may be challenged "upon the grounds of fraud, duress, or material mistake of fact"); NRS 126.051(2) (providing a conclusive presumption of paternity based on DNA testing).

Supreme Court
of
Nevada

145, 161 P.3d 239 (2007), and by not thoroughly analyzing A.A.'s best interest under NRS 125C.0035(4) to determine the custody arrangement.

We review a child custody determination for an abuse of discretion. *Wallace v. Wallace*, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996). Under NRS 126.161(4)(a), an order in an action to determine paternity may "[c]ontain any other provision directed against the appropriate party to the proceeding, concerning . . . the custody and guardianship of the child, visitation with the child, . . . or any other matter in the best interest of the child." The Legislature has declared that it is the policy of this state "[t]o ensure that minor children have frequent associations and a continuing relationship with both parents after the parents have ended their relationship" and "[t]o encourage such parents to share the rights and responsibilities of child rearing." NRS 125C.001(1)-(2). Consequently, in an action to determine physical custody, a court should award parents joint physical custody unless the best interest of the child requires otherwise. *See* NRS 125C.0035(3)(a) (providing that an award of physical custody to both parents is preferred); *see also* NRS 125C.0035(1) ("In any action for determining physical custody of a minor child, the sole consideration of the court is the best interest of the child.").

In this matter, the district court ordered that Ignacio and Rosie shall have joint physical custody of A.A. and put in place a parenting schedule for roughly equal time, effective immediately after the hearing. The court did not engage in a child custody modification analysis, but it was not required to do so because Ignacio did not seek to modify an existing custody order, as no such order had been entered regarding A.A., and he instead sought an initial custody determination following a decision on paternity. *See* NRS 125C.0015(2) ("If a court has not made a determination

Supreme Court
of
Nevada

(O) 1947A

10

regarding the custody of a child, each parent has joint legal custody and joint physical custody of the child until otherwise ordered by a court of competent jurisdiction."); NRS 125C.0045(1) (providing that the district court may "[a]t any time modify or vacate [a custody order]"); *see also Ellis*, 123 Nev. at 150, 161 P.3d at 242 (setting forth a test that applies in evaluating custody *modification* requests). Thus, contrary to Rosie's and Henry's argument, the court properly declined to engage in an *Ellis* analysis.

The district court's custody determination comports with the record facts presented and the preferences that NRS 125C.0025 and NRS 125C.0035(3)(a) establish that joint physical custody ordinarily is in the best interest of the child. Once the district court determined that Ignacio was A.A.'s biological father and that Rosie and Ignacio had no custody order in place as to A.A., NRS 125C.0015(2) gave Ignacio and Rosie joint custody "until otherwise ordered by a court of competent jurisdiction." With that as its starting point, the district court proceeded to determine whether to order something besides joint physical custody based on the evidence and law presented.

Rosie appeared pro se in district court, while Henry and Ignacio each had separate counsel. Before entering its custody order, the district court questioned Rosie about A.A. and his relationship with her, Henry, and Ignacio. In awarding joint physical custody to Ignacio and Rosie, the district court found that "Henry and Rosie intentionally deprived Ignacio of time with [A.A.]" and that, as a result, Ignacio has "missed [A.A.]'s infancy, toddlerhood, and young childhood." This triggered the joint custody preference stated in NRS 125C.0025, which provides that "[w]hen a court is making a determination regarding the physical custody of a child, there is

a preference that joint physical custody would be in the best interest of a minor child if . . [a] parent has demonstrated, or has attempted to demonstrate but has had his or her efforts frustrated by the other parent, an intent to establish a meaningful relationship with the minor child." The district court also found that, "[t]he best interest factor under NRS 125C.0035 which considers 'which parent is more likely to allow the child to have frequent associations and a continuing relationship with the noncustodial parent' incredibly favors Ignacio." In light of the limited record presented, the district court did not abuse its discretion in awarding joint physical custody of A.A. to Rosie and Ignacio, consistent with the parental statutes and preferences stated in NRS 125C.0015, NRS 125C.0025, and NRS 125C.0035(3)(a).[6]

## CONCLUSION

We conclude the district court properly applied the NPA in finding that Ignacio is A.A.'s legal father with corresponding parental rights. We further conclude the district court properly determined that Ignacio's status as natural father entitled him to custody rights, and that it

---

[6]We are not persuaded by Rosie's and Henry's argument that Ignacio's failure to obtain a guardian ad litem for A.A. provides an additional basis for reversal and remand. Although the judge who presided over an initial hearing ordered that contact be made with the Children's Attorney Project and that Ignacio must pay guardian ad litem fees, it is the role of the court, not a party, to appoint a guardian ad litem. Moreover, the decision to make the child a party or to appoint a guardian ad litem is committed to the discretion of the district court. See NRS 126.101(1) (providing that in a paternity action, the court *may* make the child a party to the action and appoint a guardian ad litem for the child if it determines that doing so is necessary). Here, the court considered Rosie's and Henry's guardian ad litem concerns and decided not to appoint one or to make A.A. a party to the action. We perceive no abuse of discretion in that decision.

did not abuse its discretion in ordering joint physical custody. We therefore affirm the district court's order.

_____, J.
Stiglich

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

_____, J.
Silver

_____, J.
Pickering

_____, J.
Herndon